IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                                    Criminal Action No. 2:24-CR-4

NITESH RATNAKAR,

        Defendant.

_____/

## **DEFENDANT'S MOTION FOR NEW TRIAL**

Defendant, Nitesh Ratnakar, moves this Honorable Court for a new trial, pursuant to Rule 33, of the Federal Rules of Criminal Procedure.

## **MEMORANDUM IN SUPPORT**

Rule 33(a) provides that upon the Defendant's motion, the court may vacate any judgment and grant a new trial in the interest of justice. *United States v. Arrington,* 757 F.2d 1484, 1485 (4th Cir. 1985). Rule 29(d) provides that if the court enters a judgment of acquittal after a guilty verdict the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. See, *United States v. Campbell,* 977 F.2d 854 (4th Cir. 1992). When the Court grants a Rule 29 motion and conditionally grants a new trial, a court must specify the reasons for its determination. Fed. R. Crim. P. 29(d)(1).

When the motion for new trial, brought pursuant to Rule 33(a), attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit, pursuant to Rule 29, on the ground of insufficient evidence. In deciding a motion for new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government. This is partially because the granting of a Rule 29 motion results in an acquittal while the granting of a Rule 33 motion results in a new trial.

When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial. See *Tibbs v. Florida*, 457 U.S. 31, 38 n. 11 and 44 n. 20 (1982) and *United States v. Shipp*, 409 F.2d 33, 36-37 (4th Cir. 1969). The trial judge, who had the advantage of observing the witnesses, is vested with the broad power to consider the credibility of the witnesses in deciding motions for a new trial. *United States v. Arrington,* 757 F.2d 1484, 1485-1486 (4th Cir. 1985).  The facts in the instant case establish that the interest of justice mandates a new trial.

### Background Facts

At all times relevant hereto, Nitesh Ratnakar has been a licensed medical doctor. In or about 2011, Dr. Ratnakar began his private medical practice and formed West Virginia Gastroenterology and Endoscopy LLC ("WVGE"). Dr. Ratnakar also owns Saneso Inc. ("Saneso") in which he conducted research and development of a new endoscope that he believed would revolutionize colonoscopies and related procedures. In 2012, Dr. Ratnakar expanded his medical practice by acquiring Valley Gastroenterology and Endoscopy as well as Valley Endoscopy. These entities were commonly referred to as "Valley".

2

Commencing in or about 2006, Dr. Ratnakar hired Glen Wyland of C&G Tax Services Inc. to prepare his annual personal Form 1040 individual tax return. In 2011, Dr. Ratnakar hired Wyland to handle the payroll of WVGE. Approximately in 2017, Dr. Ratnakar decided to bring Saneso's research and development activities "in house" and hired Wyland to handle Saneso's payroll. Wyland's duties for both WVGE and Saneso included preparing the bi-weekly paychecks for the employees, timely paying over the appropriate payroll taxes to the IRS, preparing and filing the quarterly Form 941 payroll tax returns, and accurately applying the research and development tax credits as offsets to any payroll tax obligation WVGE and/or Saneso had arising from funds withheld from employee's paychecks.  Wyland did not handle the payrolls of the Valley entities. Those entities were handled by Maria Cominsky and Gil Ullom.

Dr. Ratnakar has no formal education or experience with accounting or tax matters. During the period of time from 2018 through 2022, Wyland represented to Dr. Ratnakar that he had properly prepared the employees bi-weekly paychecks for Saneso and WVGE and had entered all of the information into the QuickBooks program on the computer at his office. Wyland further represented that he timely paid over any payroll taxes due to the IRS and had timely prepared and filed the Form 941 payroll tax returns. Wyland advised Ratnakar that WVGE and Saneso had virtually no payroll tax obligation because the applicable research and development tax credits earned by the two entities eliminated their tax obligations in their entirety.

On April 27, 2023, WVGE and Saneso were served with Grand Jury subpoenas requesting payroll records, tax returns, and other financial documents. The due date for the

3

production of the records was June 6, 2023. Dr. Ratnakar was shocked when the Special Agents stated that he was under investigation. The agents did not provide any details and Dr. Ratnakar thought that there surely was some kind of mistake and that once the Grand Jury had all of the documents it had subpoenaed, it would realize that Dr. Ratnakar had done nothing wrong.

Dr. Ratnakar contacted Wyland for assistance in gathering the requested records since Wyland had previously told him that he had all the information stored in his QuickBooks program on his computer. Dr. Ratnakar did not have access to Wyland's computer or the QuickBooks program. Wyland told Dr. Ratnakar that there was a lot of documentation requested and that it would take a few days to gather it all. Wyland has a disability. He suffers from Cerebral Palsy since birth and over the years the disease has gotten significantly worse; especially after his fall in late 2022. Dr. Ratnakar agreed to return in a few days. When Dr. Ratnakar returned Wyland presented him with numerous documents including the quarterly payroll tax returns of WVGE and Saneso for the period of time commencing on the first quarter of 2017 through the third quarter of 2022. On or about May 25, 2023, Dr. Ratnakar provided the documentation Wyland had given him to his lawyers. On June 5, 2024, Dr. Ratnakar's lawyers produced the documentation to the Government in response to the Grand Jury subpoenas. On or about August 23, 2023, special agents interviewed Wyland.

In October 2023, the AUSA assigned to the investigation communicated to Dr. Ratnakar's lawyers that the IRS did not have any record of receiving most of the tax returns

4

produced by WVGE and Saneso and that the Government believed that Dr. Ratnakar was guilty of willfully failing to pay over taxes withheld from the employees' bi-weekly paychecks. Further, the individual income tax returns, Form 1040, for 2020, 2021 and 2022 had not been filed.

Dr. Ratnakar confronted Wyland and Wyland maintained that he timely prepared and filed all of the Form 941 tax returns from 2018 through 2022 as well as the Form 1040 tax returns for 2020 and 2021. Wyland also maintained that there was no underpayment of taxes because there were no taxes due since the research and development tax credits eliminated the entire tax obligation.

Dr. Ratnakar no longer believed Wyland and hired a new accountant to file the 1040 tax returns for 2020 and 2021 that Wyland had prepared but never filed with the IRS, along with the tax return for 2022. The three returns were filed on or about October 23, 2023. Dr. Ratnakar began gathering money to pay in full the payroll taxes withheld. Dr. Ratnakar made payments to the IRS during the last week of November 2023 and continued through January 2024. A total of approximately $1.8 million dollars was paid by Saneso and WVGE to the IRS.

### The Indictment

The indictment alleges that in the calendar years 2018 through 2022, West Virginia Gastroenterology & Endoscopy ("WVGE") and SANESO withheld payments from their employees' paychecks. However, beginning at least in the first quarter of 2018, WVGE allegedly failed to make all required payments to the Internal Revenue Service and

SANESO made no payments. The indictment states that in total, during the calendar quarters alleged in Counts 1 through 38 of the Indictment, WVGE and SANESO failed to account for and pay over approximately $2,419,560.07 in payroll taxes. This amount did not give Dr. Ratnakar any credit for the approximate $1.8 million that WVGE and Saneso paid during November 2023 through January 2024 nor did the Indictment give WVGE or Saneso any credit whatsoever for research and development tax credits during 2018 through 2022.

The indictment, in relevant part, further alleges that on or about the dates listed in the chart below, in Randolph County, in the Northern District of West Virginia, the defendant, NITESH RATNAKAR, did willfully fail to pay over to the Internal Revenue Service the federal income taxes withheld and Federal Insurance Contributions Act taxes due and owing to the United States on behalf of WVGE and SANESO and their employees for the quarters listed in the chart below, which Dr. Ratnakar had caused WVGE and SANESO to deduct and collect from the total taxable wages of WVGE's and SANESO's employees and truthfully account for, during those quarters, in the amounts listed in the chart below, with each calendar quarter constituting a separate count of this Indictment:

| COUNT | DATE | QUARTER | COMPANY | TAX AMOUNT |
|---|---|---|---|---|
| 1 | 05-24-2018 | 201803 | WVGE | $89,686.74 |
| 2 | 07-31-2018 | 201806 | WVGE | $81,491.78 |
| 3 | 10-31-2018 | 201809 | WVGE | $77,945.29 |
| 4 | 01-31-2019 | 201812 | WVGE | $78,783.28 |
| 5 | 08-28-2019 | 201903 | WVGE | $82,748.56 |
| 6 | 09-03-2019 | 201906 | WVGE | $83,187.40 |

| 7 | 10-31-2019 | 201909 | WVGE | $74,196.09 |
| 8 | 01-31-2020 | 201912 | WVGE | $75,055.20 |
| 9 | 04-30-2020 | 202003 | WVGE | $54,864.94 |
| 10 | 07-31-2020 | 202006 | WVGE | $73,352.62 |
| 11 | 10-31-2020 | 202009 | WVGE | $78,130.98 |
| 12 | 01-31-2021 | 202012 | WVGE | $82,312.91 |
| 13 | 04-30-2021 | 202103 | WVGE | $97,590.37 |
| 14 | 07-31-2021 | 202106 | WVGE | $92,089.36 |
| 15 | 10-31-2021 | 202109 | WVGE | $94,808.73 |
| 16 | 01-31-2022 | 202112 | WVGE | $95,931.75 |
| 17 | 04-30-2022 | 202203 | WVGE | $107,727.94 |
| 18 | 07-31-2022 | 202206 | WVGE | $79,429.28 |
| 19 | 10-31-2022 | 202209 | WVGE | $70,884.61 |
| 20 | 04-30-2018 | 201803 | SANESO | $20,246.17 |
| 21 | 07-31-2018 | 201806 | SANESO | $22,048.72 |
| 22 | 10-31-2018 | 201809 | SANESO | $22,387.12 |
| 23 | 01-31-2019 | 201812 | SANESO | $30,081.81 |
| 24 | 04-30-2019 | 201903 | SANESO | $29,329.82 |
| 25 | 07-31-2019 | 201906 | SANESO | $43,903.57 |
| 26 | 10-31-2019 | 201909 | SANESO | $65,411.16 |
| 27 | 01-31-2020 | 201912 | SANESO | $54,845.79 |
| 28 | 04-30-2020 | 202003 | SANESO | $45,799.63 |
| 29 | 07-31-2020 | 202006 | SANESO | $48,044.22 |
| 30 | 10-31-2020 | 202009 | SANESO | $52,683.70 |
| 31 | 01-31-2021 | 202012 | SANESO | $55,269.88 |
| 32 | 04-30-2021 | 202103 | SANESO | $49,503.99 |
| 33 | 07-31-2021 | 202106 | SANESO | $57,371.23 |
| 34 | 10-31-2021 | 202109 | SANESO | $60,399.58 |
| 35 | 01-31-2022 | 202112 | SANESO | $44,430.41 |

| 36 | 04-30-2022 | 202203 | SANESO | $55,564.76 |
| 37 | 07-31-2022 | 202206 | SANESO | $50,559.77 |
| 38 | 10-31-2022 | 202209 | SANESO | $41,460.98 |

All in violation of Title 26, United States Code, Section 7202.

## Motion in Limine

On October 25, 2024, the Government filed a motion in limine to prevent Dr. Ratnakar from presenting evidence at trial that he made late tax payments and/or filed returns after the investigation commenced in April 2023. (ECF #57) On October 27, 2024, Doctor Ratnakar filed his response in opposition of the Government's motion in limine. Dr. Ratnakar argued that the payments he made upon learning that Wyland had lied to him were probative to the issue of willfulness on the dates that the payments were originally due. Further, the probative value of the payment evidence was not outweighed by the possibility that the evidence would confuse the jury. In support of his position Dr. Ratnakar cited: *Heindel v. United States,* 150 F. 2d 493, 497 (6th Cir. 1945); *United States v. Matot,* 146 F.2d 197, 198 (2nd Cir. 1944); *United States v. Wicoff,* 187 F.2d 886, 890-891 (7th Cir. 1951); *Cheek v. United States, 498 U.S. 192 (1991); United States v. Klotz,* 792 F. Supp. 28 (M.D. PA 1992); *United States v. Stout,* 601 F.2d 325 (7th Cir. 1979); wherein the court stated that subsequent conduct was relevant to the issue of knowledge to file tax returns. *United States v. Thrush,* 2021 U.S. Dist. LEXIS 118742 (E.D. Mich. 2021); *United States v. Hill,* 363 F.2d 176, 180 (5th Cir. 1966); *United States v. Sperrazza,* 2013 U.S. Dist, LEXIS 77901 (M.D. Ga. 2013); and *Berkovitz v. United States,* 213 F.2d 468, 472 (5th Cir. 1954).

On November 4, 2024, the Court granted the Government's motion in limine and stated that the risk of jury confusion outweighed the probative value of the late payments and returns. The Court further stated that the payment evidence would create the risk of jury nullification and the Court was not convinced the risk could be eliminated through a limiting instruction. (ECF #70) Dr. Ratnakar believes that the Court was mistaken when it made this ruling. Dr. Ratnakar's inability to admit the evidence of payment as evidence of lack of willfulness prevented him from receiving a fair trial.

The 1040 tax return for 2022 was due to be filed on October 15, 2023. The 2020, 2021 and 2022 returns were filed during October 2023. Dr. Ratnakar mailed the payment to the IRS during the last week of November 2023. All of these facts occurred after Dr Ratnakar learned of the grand Jury's investigation in April 2023. It is fundamentally unfair to allow the Government to introduce the Forms 1040 filed in October 2023 into evidence but deny Dr. Ratnakar the ability to prove that he mailed his payment during November 2023. Dr. Ratnakar was not advised by the Government of the allegations against him until the middle of October 2023. Once Dr. Ratnakar was informed of the allegations he promptly made payments to the IRS commencing the last week of November 2023 that totaled approximately $1.8 million; well before his indictment in February 2023. Prior to October 2023, Dr. Ratnakar had been told by his accountant Wyland that all tax returns had been timely filed and there were no taxes unpaid. While the prosecution was allowed to bring charges relating to the defendant's conduct that occurred after the investigation started; and present prejudicial testimony regarding withholdings and resulting refunds; the defendant was precluded from presenting into evidence the payments he made in temporal

proximity to the charges in Counts 39, 40, and 41. Kelly alluded to the defendant getting a refund; whereas the defendant has not received any refunds relating to his personal taxes for 2020-2022. (ECF#99-P.115, 116, 117) Kelly incorrectly testified that the defendant had not made any deposits for his personal withholdings *as of the date of his testimony.*) (ECF#99-P.114, 117, 120)

### Selection of the Jury

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . " The right to a public trial in a criminal case extends to the jury selection phase of the trial. *Presley v. Georgia,* 558 U.S. 209, (2010); *Waller v. Georgia,* 467 U.S. 39 (1984) and *United States v. Gupta,* 699 F.3d 682 (2nd Cir. 2011).

The jury selection process in the instant case occurred on Tuesday, November 12, 2024. As part of the process, the entire jury venire was brought into the courtroom at one time.  On November 19, 2024, the jury rendered its verdict. During the days that followed the verdict, the Defendant learned from his wife and daughter that they were not permitted in the courtroom to observe the jury selection process. When Dr. Ratnakar's daughter entered the courtroom, she was asked her name by court personnel. The staff person checked a list and then told Dr. Ratnakar's daughter that she was not a juror and she would have to wait outside. Dr. Ratnakar's daughter obeyed. A short time later, Dr. Ratnakar's wife arrived. Dr. Ratnakar's daughter told his wife that she was told to wait outside the courtroom. Dr. Ratnakar's wife approached the Marshals at the doorway to confirm what Dr. Ratnakar's daughter was told. The United States Marshals told her that the courtroom

was closed to the public until a jury had been selected and that they could wait in the hallway or they could leave the building and return in a couple of hours. Defendant's family members waited in the hall. They were permitted into the courtroom once the jury selection process was completed. Attached hereto as Exhibits "A" and "B" are the sworn statements of Dr. Ratnakar's wife and daughter. Also attached hereto as Exhibit "C" is Dr. Ratnakar's sworn statement on this issue. Finally, attached hereto as Exhibits "D", and "E" are the statements of Defendant's counsel, David Garvin and Harry Smith III, on this issue.

These facts constitute a violation of Dr. Ratnakar's Sixth Amendment right to an open and public trial. The rights in issue are structural in nature and require a new trial. *United States v. Agosto-Vega*, 617 F.3d 541 (1st Cir. 2010); *United States v. Gupta,* 699 F.3d 682, 686 (2nd Cir. 2011); *Presley v. Georgia,* 558 U.S. 209, (2010); and *Waller v. Georgia,* 467 U.S. 39 (1984).

### Government Witnesses

The Government called the following witnesses during its case-in-chief: Dakota Kelly, Elizabeth Winter, Donnie Sheller, Glen Wyland, James Pinkney, Gilbert Ullom, Alisha Miller, Brandy Crawford, Ally King, Debbie Jones, Casandra Shiflet, Mary Dasher, George Goetz, and Daniel Shats. The government did not call anyone to explain how the tax amount for each count listed in the indictment was determined.

### Special Agent Dakota Kelly

The Government's first witness was special agent Dakota Kelly. Kelly generally described the nature of a criminal investigation for failure to pay over payroll taxes. Kelly stated that the IRS records reflected that it had received three Form 941 quarterly payroll

tax returns from WVGE during the period of time commencing 2018 through 2022. The three returns were not signed by Dr. Ratnakar although one bore his signature stamp, a stamp that Glenn Wyland had custody of to enable him to prepare paychecks for the employees. See Government Trial Exhibits 1, 5 and 6. Kelly testified that WVGE should have filed 19 quarterly Form 941 payroll tax returns for the period of time starting with the first quarter of 2018 and ending with the third quarter of 2022. Kelly further testified that Saneso should have also filed 19 quarterly Form 941 payroll tax returns during this same period of time. However, the IRS had no record of receiving any from Saneso.

Kelly testified that WVGE and Saneso were served subpoenas requiring the production of payroll tax returns and other records on or before June 6, 2023. WVGE produced 19 Form 941 payroll tax returns for the period of time commencing with the first quarter of 2018 through the third quarter of 2022. Saneso also produced 19 Form 941 payroll tax returns for the same period of time. See Government's Trial Exhibits 68, 69 and 70. Not one of these payroll tax returns were signed by Dr. Ratnakar. All of the payroll tax returns produced pursuant to the grand jury subpoenas were signed by Wyland as the accountant and by Wyland on behalf of C&G Tax Services as the paid return preparer.

Kelly also confirmed that the payroll and accounting for the Valley entities owned and operated by Dr. Ratnakar was handled by Maria Cominsky and Gil Ullom and not Wyland. (ECF#99-P.40/234-P41/234). Kelly also agreed that the Valley entities had paid over $1 million in payroll taxes during the 2018-2022 time frame.

**Elizabeth Winter a/k/a Elizabeth Granados**

Elizabeth Granados was the second witness called to testify at trial. Ms. Granados is a Revenue Officer with the IRS. As a Revenue Officer her job is to collect taxes owed to the IRS. On September 20, 2016, Granados was assigned to WVGE to collect delinquent payroll taxes. (ECF#100-P.60/234) Granados issued an initial letter to WVGE on October 26, 2016. (ECF#100-P.62/234) She received an IRS Form 2848 Power of Attorney Form from WVGE designating Glen Wyland as its representative on November 23, 2016. (ECF#100-P.64/234) The collection case continued into 2017. (ECF#100-P.68/234) Dr. Ratnakar disputed the balance due as of November 2017. (ECF#100-P.69/234) On November 28, 2017, Granados had a meeting with Dr. Ratnakar and Glen Wyland. (ECF#100-P.100/234) Dr. Ratnakar stated that he would make full payment. (ECF#100-P. 100/234) On May 24, 2018, Granados received the WVGE Form 941 payroll tax return for the first quarter of 2018 by fax from Wyland. (ECF#100-P.103/234 and 123/234) Wyland signed the return as the paid preparer. (ECF#100-P.106/324)

WVGE did not think that there was a balance due to the IRS. (ECF#100-P.125/234) On May 21, 2018, Wyland wrote to Granados explaining that WVGE had overpaid its payroll obligation by $12,443.01. (See Defendant's Trial Exhibit 55 and ECF#100-P.127/234-131/234) The letter confirmed that Wyland had spoken with Granados in April 2018, about the overpayment of payroll taxes by WVGE. Granados prepared a civil responsible person penalty form (Form 4180) and mailed it to WVGE. The information that Granados put on the form was not accurate. The Form 4180 was never signed or returned to Granados. (ECF#100-P.134/234) Granados stated that she did not know who WVGE had assigned the responsibility to prepare Form 941 payroll tax returns for 2016

and 2017. (ECF#100-P.137/324-138/234). Granados stated that the matter that she was involved in was a civil matter only. She had nothing to do with the criminal indictment filed in this case. (ECF#100-P.137/324-138/234)

### Donnie Sheller

The Government called Donnie Sheller as its next witness. Mr. Sheller testified that he is the chief administrative officer of Main Street Bank. Mr. Sheller stated that he was familiar with the monthly bank statements produced by Main Street Bank and that the bank did not have the ability to amend bank statements. Mr. Sheller did not have any personal knowledge about the particular bank statement he was asked about (ECF#100-P.152/234) and he did not know why the name of the business was redacted from the statement. (ECF#100-P.154/234) Mr. Sheller's testimony related solely to Count 42 of the Indictment. Dr. Ratnakar was found not-guilty as to Count 42.

### Glen Wyland

The Government next called Glen Wyland to testify. Wyland was supposed to be the Government's star witness. He was the accountant who handled the payroll for WVGE since approximately 2016 and for Saneso, once it was decided to bring its research and development operations "in house," since approximately 2017. The Government granted Wyland immunity for his testimony. (ECF#101-P.87/238) However, instead of proving that Dr. Ratnakar was guilty of willfully failing to pay over payroll taxes for the period of time commencing with the first quarter of 2018 through the third quarter of 2022 (Counts 1-38 of the Indictment), Glen Wyland proved that Dr. Ratnakar was not guilty.

Wyland's testimony was by and large uncontradicted. Wyland attended Davis & Elkins College from 1980 to 1984. (ECF#101-P.5/238) He earned a bachelor's degree in accounting and finance. Wyland was an excellent student and received a letter grade of "A" in almost every class. (ECF#101-P.6/238) He graduated with high honors. (ECF#101-P.6/238)

In 2008, Wyland met Dr. Ratnakar who was working at the Davis Medical Center at the time. (ECF#101-P.7/238) In or about 2011-2012, Dr. Ratnakar left his employment at Davis Medical Center and started his own private medical practice known as WVGE. (ECF#101-P.7/238) The following year Dr. Ratnakar acquired the Valley entities. The accounting and payroll for the Valley entities were not handled by Wyland. That work was handled by accountants Maria Cominsky and Gil Ullom. (ECF#101-P.7/238) There were no reported problems with payroll tax payments for the Valley entities during any of the years in issue.

Glen Wyland testified that during the period of time from 2016 through 2022, he was the accountant for WVGE, Saneso, and Dr. Ratnakar. (ECF#101-P.8) WVGE and Saneso would provide the payroll data to Wyland on a bi-weekly basis. Wyland would enter the data into his QuickBooks program and issue the paychecks. (ECF#101-P.9/238) Wyland could use QuickBooks to prepare the quarterly Form 941 payroll tax returns using the same data. (ECF#101-P.9/238)

On June 22, 2023, Special Agents Devericks and Parker interviewed Wyland. (ECF#101-P.10/238) Dr. Ratnakar told Wyland to be honest and truthful when answering the questions posed by the special agents. (ECF#101-P.13/238) Wyland testified that it was

his responsibility to prepare the paychecks and 941 payroll tax returns for WVGE and Saneso. (ECF#101-P.13/238) Wyland also testified that it was his responsibility to make certain that the proper amount got paid to the IRS for the Form 941 tax returns. (ECF#101-P.13/238-14/238) Wyland signed the thirty-eight Form 941 payroll tax returns for the period of time commencing with the first quarter of 2018 through the third quarter of 2022 for WVGE and Saneso. Wyland signed each return once on behalf of C&G Tax Services, the paid preparer, and once as the accountant of WVGE or Saneso. (ECF#101-P.15/238) Wyland told the special agents that he had a copy of the 941 forms for 2018 through 2022 at his office. (ECF#101-P.19/238) This is the same statement that Wyland periodically told Dr. Ratnakar. (ECF#101-P.17/238)

Wyland testified that he had attended a five-hour meeting with Dr. Ratnakar and Revenue Officer Granados. (ECF#101-P.21/238) They met to reach an agreement and to resolve any tax obligation. Granados never refused to speak with Wyland at any time during the meeting. (ECF#101-P.21/238) Wyland stated that if a civil notice was received from the IRS by WVGE it was given to him as the accountant to handle. Wyland further stated that he spoke with Granados concerning WVGE's payroll taxes approximately 6 times in addition to their 5 hour meeting. (ECF#101-P.22/238) As the accountant of the company, Wyland did not need a power of attorney to discuss the company's payroll taxes with the IRS. (ECF#101-P.23/238) An agreement was reached with Revenue Officer Granados. She suggested an installment agreement. Dr. Ratnakar stated that he preferred to pay the obligation in full. (ECF#101-P.25/238)

The net result was that WVGE overpaid the civil payroll taxes. On May 21, 2018, Wyland wrote a letter to Granados explaining that WVGE had overpaid its tax obligation by approximately $12,000 and had a credit coming. See Defendant's Trial Exhibit 55 attached hereto as Exhibit "F". (ECF#101-P.62/238)

During the meeting with the special agents, Wyland told them that R&D tax credits were being used to offset the taxes due. (ECF#101-P.24/238) This was the same thing that Wyland had told Dr. Ratnakar repeatedly during the period of time commencing 2018 through 2022. Wyland stated that it was his understanding that research and development credits offset the taxes on the 941 forms. (ECF#101-P.15/238)

Wyland knew that Saneso did not have any sales (ECF#101-P.17/238) and that Saneso had approximately $4 million a year in expenditures during the period of time commencing 2018 through 2022. (ECF#101-P.17/238) The annual payroll taxes and withholding during this period of time was $400,000. The research and development expenses greatly exceeded the payroll taxes and withholding. (ECF#101-P.18/238) Wyland also stated that approximately 40% of WVGE's annual expenditures related to the development of the new endoscope. (ECF#101-P.74/238)

On June 9, 2016, Wyland wrote to Dr. Ratnakar concerning research and development tax credits. (ECF#101-P.28/238) See Defendant's Exhibit 46 attached hereto as Exhibit "G". Dr. Ratnakar had invented a new endoscope that made 360 degree observation possible. (ECF#101-P.29/238) There were several United States Patents and FDA 510 K approval for the device. (ECF#101-P.28-32/238) On June 9, 2016, Wyland wrote the following:

"June 9, 2016

Nitesh Ratnakar
Saneso Inc. & W[V] Gastroenterology

Ref.    R&D Tax Credits

Dr. Ratnakar,

R&D credits are available to companies engaged in research and development of new products and processes. Recently passed PATH act made these credits permanent. These credits can be applied dollar for dollar towards corporate income, pass through income and **all company payroll taxes.** We will be happy to assist with these in case you company proceeds with R&D of the new medical endoscope."

Should you have questions or need additional information, please contact us. Thank you for your consideration and assistance.

Sincerely and Respectfully,

Glen Wyland
Accountant      (Emphasis Supplied)

(Defendant's Exhibit 46) Attached hereto as Exhibit "G"

On October 26, 2020, Glen Wyland wrote another letter to Dr. Ratnakar concerning

R&D tax credits.  See, Defendant's Exhibit 47 attached hereto as Exhibit "H".

October 26, 2020

RE; Saneso and WV Gastroenterology

Dr. Ratnakar:

We had previously discussed the federal program known as the PAYROLL PROTECTION PROGRAM (PPP) that may be helpful to your companies during the Covid pandemic slowdown. I believe and have conveyed to you that it is our best course to continue as we are by utilizing R&D credits available currently.

I would be pleased to discuss this matter further at any time if you wish to do so.

Sincerely and Respectfully,

Glen Wyland
ACCOUNTANT

At trial Wyland added context to this letter.

Q. And so, at this time, you honestly believed that the research and development tax credits were eliminating any tax obligation – payroll tax obligation, so it was not necessary to get involved in Payroll Protection Program loans. Isn't that true?

A. I would agree with that. (ECF#101-P.57/238)

On August 21, 2022, Wyland wrote a third letter relating to R&D tax credits. See, Defendant's Exhibit 48 attached hereto as Exhibit "I".

August 21, 2022

RE; Saneso and WV Gastroenterology

Dr. Ratnakar:

There is a new federal program known as the EMPLOYEE RETENTION CREDIT PROGRAM (ERC) that may be helpful to your companies. Information is still becoming available at this time. Although I believe we would be eligible for the credit, I believe we should continue to use existing credits available for research and development and perhaps revisit the ERC when more information on it becomes known.

I would be pleased to discuss this matter further if you wish to do so.

Sincerely and Respectfully,

Glen Wyland

Accountant

Wyland knew that Dr. Ratnakar relied upon his expertise as an accountant and somebody who knew taxes, especially payroll taxes. (ECF#101-P.59/238) Further, Dr. Ratnakar never held back any information from Wyland when asking for his expert advice. Wyland believed that Dr. Ratnakar was at all times acting in good faith. (ECF#101-P.59-60/238)

In April 2023, the Grand Jury served a subpoena for records on Saneso and WVGE. The subpoenas requested payroll tax returns and other financial records. Wyland stated that Dr. Ratnakar contacted him because he needed copies of the payroll tax returns Wyland had prepared for each of the entities from 2017 through 2022. (ECF#101-P.27/238 and P.33/238)

Wyland testified that timely filing the payroll tax returns was his responsibility. (ECF#101-P.37/238) Wyland also stated that it was his responsibility to file Dr. Ratnakar's form 1040 tax return. (ECF#101-P.38/238)

Wyland told Dr. Ratnakar that he had timely prepared and filed the quarterly Form 941 tax returns for WVGE and Saneso for 2018 up to August 2022. (ECF#101-P.40-41/238)

> Q.  So up until that point you had advised the agents, on several occasions, that you prepared all of the 941 tax returns for WVGE, starting the first quarter of 2017 through the third quarter of 2022; correct?
>
> A. Yes. But I – I didn't actually do the '22.
>
> Q.  Now, we're talking about the payroll tax returns prior to August.
>
> A. Okay.

Q. And –

A. That would be a correct statement, then.

Q. – you told the agents the same thing for Saneso: From 2017 up to the third quarter of 2022, that you had timely prepared those tax returns and mailed them in to the IRS; right?

A. To my knowledge I had done so.

Q. And you had also told Nitesh Ratnakar the same thing; correct?

A. Yes. It wouldn't have been any different.  (ECF#101-P.40-41/238)

At all times relevant hereto, Wyland told Ratnakar that he was timely filing the payroll tax returns for Saneso and WVGE. In reality, Wyland did not prepare or file any of them. When Dr. Ratnakar received a notice from the IRS he would give it to Wyland to handle as the company accountant. Wyland would tell Dr. Ratnakar that he would take care of the matter. However, this was a lie because Wyland did nothing and he never told Dr. Ratnakar the truth. (ECF#101-P.44-45/238)

Wyland believed that the R&D tax credits wiped out any payroll tax obligation in its entirety. There was no tax liability. Wyland led Dr. Ratnakar to believe that there were no payments due to the IRS from Saneso or WVGE for payroll taxes of any kind during 2018 through 2022. Therefore, there was no obligation to file a payroll tax return. (ECF#101-P.46/238)

Q. The point is, sir, that even - - your position was because the R&D credits were factored in, they wiped out any obligation; correct?

A. Yes.

Q. And since there was no tax obligation, then there was no need to file a return, correct?

A. That is correct.

Q. And so none of Saneso's got filed, because you had this belief that there was no obligation to file a return; correct?

A. There was no liability.

Q. Because there was no liability, because there was more than enough tax credit from research and development; correct?

A. There was excess. Right.  (ECF#101-P.46/238)

Wyland testified that he was responsible for the preparation of the quarterly Form 941 payroll tax returns for WVGE and Saneso and the required payroll payments to the IRS as reflected on the quarterly Form 941 returns. (ECF#101-P.13-14, 17/238) Wyland testified that he told Dr. Ratnakar that he had prepared and filed the 941 Forms for WVGE and Saneso during 2018 through 2022. (ECF#101-P.17/238) Wyland misled Dr. Ratnakar.

Wyland told the special agents that it was his responsibility to prepare and file the quarterly returns for WVGE and Saneso. (ECF#101-P.17/238) He also told them that he had possession of the completed Form 941 returns from 2016 through 2022. (ECF#101-P.17/238) Wyland stated that this is what he had told Dr. Ratnakar. (ECF#101-P.17/238)

Q. And that is the same thing that you had told Dr. Ratnakar from 2016 all the way through 2022; isn't that true?

A. That's correct.

Q. So that would also apply for WVGE, but also Saneso; isn't that true?

A. Yes, it would. It's true. * * *  (ECF#101-P.17/238)

Wyland further testified that he was responsible to pay over Saneso's and WVGE's employment taxes.

Q. You also stated, "I am the responsible person for collecting, accounting for, and paying over WVGE and Saneso's employment taxes to the IRS through the Electronic Federal Tax Payment System, EFTPS." Isn't that accurate?

A. That should be accurate, yeah.  (ECF#101-P.52/238)

A. Wyland confirmed that Dr, Ratnakar never asked or directed him to act in a dishonest manner. (ECF#101-P.53/238

During the five years, 2018 through 2022, WVGE received approximately 10 notices from the IRS on various subjects. A few were simply IRS notices that it needed additional time to respond to a correspondence. A few stated that WVGE had overpaid its tax obligation for a specific quarter. These notices were routed to Wyland as the company's accountant. (ECF#101-P.73-74/238) See Defendant's Trial Exhibit 73 attached hereto as Exhibit "J," dated May 17th, 2020; wherein, Dr. Ratnakar inquired: "Glen, any update on this?"

Wyland also admitted that he had lied to other clients that he was supposed to file tax returns for. He told each of these clients that he had prepared and timely filed their tax returns and they did not owe the IRS any money. This included Dr. Ratnakar, Robert Judy, Jr., Earnest Todd Howell, Gary Herron, and others. (ECF#101-P.75-78/238) Even as he fell

further and further behind, Wyland always thought that he would get caught up by filing all of the delinquent tax returns and that no one would know. (ECF#101-P.79-80/238)

> Q.  So you certainly were the one who was responsible to do the second quarter of 2022; correct?
>
> A.  I would say that's correct, yeah. I was behind on a lot of stuff.
>
> Q.  Behind. Yes, sir. Behind means that they weren't filed; right?
>
> A.  Yes.
>
> Q.  Okay. Now – so it is fair to state that this was not an accident. This was done by you intentionally because you thought that you could get caught up and no one would know; right?
>
> A.  I had hopes no one would know. (ECF#101-P.80-81/238)

Dr. Ratnakar was a victim of Glen Wyland misleading him to believe that:

1.  the Form 941 tax returns were timely prepared;

2.  the Form 941 tax returns were timely filed;

3.  the quarterly payroll obligation was eliminated by the available research & development tax credits; and

4.  Saneso and WVGE were current with the IRS with regard to the payroll tax obligations and there was no amount due.

Wyland admitted that he had never seen Dr. Ratnakar prepare any tax return. In fact, Dr. Ratnakar could not possibly prepare a tax return for WVGE or Saneso because the required information was contained exclusively in the QuickBooks program on the computer located in Wyland's office. (ECF#101-P.82/238)

Q. Sir, Dr. Ratnakar didn't have any way to prepare those returns, because the information for those returns was in QuickBooks on your computer at your office; correct?

A. Yeah, I would say.

Q. And Dr. Ratnakar didn't have access to the QuickBooks in your computer; isn't that true?

A. That is.

Q. So there's no way that Dr. Ratnakar could have prepared tax returns going back to 2017, all the way forward to either the second or third quarter of 2022, under any circumstances, because the information was in your possession. Isn't that true?

A. It was in my possession, yeah.   (ECF#101-P.82/238)

In order for Dr. Ratnakar to be guilty of failure to pay over the payroll taxes set for the in Counts 1 through 38 of the indictment the Government needed to prove that Dr. Ratnakar acted willfully. On this point, the Court instructed the jury as follows:

As to Counts One through Thirty-Eight, willfulness is defined as the voluntary intentional violation of a known legal duty. A defendant's conduct is not willful if it was due to negligence, inadvertence, or mistake, or was the result of a good faith misunderstanding of the requirements of the law.

(Doc. 91 Page 18 of 30)

In the instant case, the uncontroverted testimony of accountant Wyland was that he told Dr. Ratnakar that he had timely filed the quarterly Form 941 returns for WVGE and

Saneso commencing the first quarter of 2018 through the third quarter of 2022. Wyland also falsely told Dr. Ratnakar that he used the research and development tax credits to eliminate any payroll tax obligation of WVGE and Saneso during the same period of time. The Government failed to prove willfulness in this case beyond a reasonable doubt or by any other objective standard. No reasonable person presented with this record could reach any other conclusion. Dr. Ratnakar is the victim of Wyland's misrepresentations. Based upon the evidence in this case, the interest of justice would be best served by the Court granting Dr. Ratnakar's motion for a new trial.

### James Pinkney

Following Glen Wyland, the government called James Pinkney as its next witness. Mr. Pinkney is a revenue officer for the IRS. Mr. Pinkney stated that in 2019 WVGE was assigned to him for collections. WVGE had accrued some new tax liabilities relating to 941 taxes. (ECF#101-P.135/238) Mr. Pinkney had a telephone conversation with accountant Glen Wyland and Dr. Ratnakar. Dr. Ratnakar confirmed that Mr. Pinkney was authorized to deal directly with Glen Wyland to resolve any tax issue. (ECF#101-P.138/238 and (ECF#101-P.153/238)) Mr. Pinkney felt that Dr. Ratnakar thought that the deposits were being made. (ECF#101-P.142/238)

Q. Okay. Did Dr. Ratnakar express any surprise when you informed him he was a semimonthly depositor?

A. I don't remember there being a surprise. I just feel like they figured that the deposits were being made. (ECF#101-P.142/238)

Mr. Pinkney stated that WVGE got in compliance by filing two missing 941 tax returns. (ECF#101-P.144/238) The two 941 tax returns were identified as Government's Trial Exhibits 5 and 6. (ECF#101-P./238)  They are two of the three tax returns Special Agent Kelly stated that the IRS had received.

Q.  Okay.  So you received these two Forms 941s, and that enabled you to

close out the collections case.

A.  Yes, Ma'am.    (ECF#101-P.147/238)

The record reflects that the payroll payments for the first quarter of 2019 (Gov. Ex. 5) and the second quarter of 2019 (Gov. Ex. 6) were made **before** the due date/filing date. (See Gov. Trial Ex. 102) These three documents (5, 6, and 102) are attached hereto as Exhibits "K", "L", and "M", respectively.

### Gil Ullom

The Government called Gil Ullom as its next witness. Mr. Ullom is a CPA with his office in Wheeling, West Virginia. (ECF#101-P.156/238) Mr. Ullom has prepared the Form 941 tax returns for Valley Endoscopy and Valley Gastroenterology & Endoscopy since late 2010. (ECF#101-P.161/238) These entities were owned and operated by Dr. Ratnakar and were commonly referred to as the Valley entities. Mr. Ullman testified that he did not remember the Valley entities ever having any underpaid payroll taxes. The bookkeeping was done by Maria Cominsky at American Medical Billing and it was usually very accurate. (ECF#101-P.170/238) Mr. Ullom testified that the entire time that he did the payroll tax returns from 2011 through 2022 there were never any problems with the IRS. (ECF#101-P.170/238)

## Alisha Miller

The next witness that the Government called to testify was Alisha Miller. Ms. Miller worked at Saneso, initially as the marketing director and then as the VP of operations. (ECF#101-P.176/238) Ms. Miller had the authority to make small purchases on behalf of Saneso. Ms. Miller stated that there were two signature stamps that had Dr. Ratnakar's signature. (ECF#101-P.187/238) Glen Wyland distributed the bi-weekly Saneso payroll checks. (ECF#101-P.188/238) Ms. Miller stated that some of the employees had issues with the IRS not having any record of receiving the funds withheld from their paychecks. (ECF#101-P.190/238) Ms. Miller made some of those issues known to Dr. Ratnakar. (ECF#101-P.190/238) Dr. Ratnakar told her to put all employee issues on a Google Doc and he would review them with Wyland on a monthly basis. (ECF#101-P.191/238) Examples of some issues were incorrect social security numbers, incorrect birthdates, or incorrect addresses. Ms. Miller stated that the primary purpose of Saneso was to develop an endoscope that had five cameras that could see 360 degrees. (ECF#101-P.202/238) The scope had several patents and FDA 510(k) approval. (ECF#101-P.203/238)

Ms. Miller testified that Glen Wyland was responsible for Saneso's payroll and payroll tax returns. (ECF#101-P.210/238)

## Brandy Crawford

Brandy Crawford testified as the next witness. Ms. Crawford has worked for both WVGE and Saneso during the past 15 years. If there were any questions about payroll Ms. Miller would direct them to Glen Wyland. (ECF#101-P.225/238) Ms. Miller, Chelsea, and

Ms. Crawford started the Google Doc to keep track of issues that ranged from changing batteries in the alarms to everything else. (ECF#101-P. 226/238)

Glen Wyland handled the payroll and used Dr. Ratnakar's signature stamp as needed. (ECF#101-P.231/238) Any time Ms. Crawford needed a check Wyland would cut the check. Dr. Ratnakar relied upon Wyland's accounting expertise and his payroll expertise. (ECF#101-P.233/238) Wyland told Ms. Crawford that he hoped that Dr. Ratnakar was not mad at him. Wyland stated that he had personally looked up the research and development tax credits and they were in the book and they were used the way they were intended to be used. (ECF#101-P.234/238)

### Ally King

Ally King was the Government's next witness. Ms. King worked at Saneso from March 2021 until the end of May 2023, as an administrative assistant to a sales territory. (ECF#102-P.4/101) Ms. King stated that Wyland was responsible for preparing the payroll. (ECF#102-P.12/101) Ms. King received a W-2 for 2021, 2022, and 2023. Her W-2s had errors and she received her refund for 2021 and 2022 late. Her 2023 refund had not been received as of the date that she testified. (ECF#102-P.19-20/101) She spoke with Glen Wyland and he gave her a letter to resolve her issue. Ms. King testified that she did not know what happened in accounting where Wyland worked. (ECF#102-P.26/101)

### Debbie Jones

Debbie Jones was an employee of Saneso from July 2019 through May of 2023. (ECF#102-P.30/101) The W-2 forms were prepared at Wyland's office. (ECF#102-P.35/101) However, Ms. Jones never compared her pay stubs with her W-2. (ECF#102-

P.37/101) She had issues with receiving her tax refund for 2022. Ms. Jones called the IRS but became frustrated and hung up the telephone. She never called the IRS again. (ECF#102-P.38/101) Ms. Jones did not know what caused the problem with her refund. (ECF#102-P.39/101)

### Casandra Shiflet

Ms. Shiflet worked at WVGE and Saneso. (ECF#102-P.44 and 49/101) The W-2 forms were prepared by Wyland. (ECF#102-P.54/101)) Ms. Shiflet stated that she realized that Glen Wyland was the accountant for WVGE and Saneso. (ECF#102-P.60/101) When there was a problem she would approach Wyland. (ECF#102-P.61/101) It was Wyland's responsibility to correct any mistake. (ECF#102-P.61-62/101)

### Mary Dasher

The Government called Mary Dasher as its next witness. Dasher is a nurse anesthetist. She started working for Dr. Ratnakar in 2015. (ECF#102-P.67/101) Glen Wyland prepared her paycheck and W-2. (ECF#102-P.69/101) In 2019, she had an issue with her social security not being properly recorded. (ECF#102-P.70/101) Ms. Dasher believed that it was the fault of Glen Wyland. (ECF#102-P.72/101) She told Dr. Ratnakar that Wyland should be replaced. (ECF#102-P.73/101) After her conversation with Dr. Ratnakar about Wyland, Wyland resolved her issues. (ECF#102-P.79/101)

Q. Did all of the issues you were continuing to have resolve?

A. Yes.

Q. So he got them all fixed?

A. He got all of mine fixed, yes.    (ECF#102-P.79/101)

Ms. Dasher had an issue with her W-2 and sent a text to Dr. Ratnakar when she believed that Wyland was not responding quickly enough. Dr. Ratnakar replied that "Glen will get to that shortly." Ms. Dasher confirmed that Wyland did in fact resolve the issue shortly thereafter. (ECF#102-P.82/101) There were years when Ms. Dasher had no problems with Wyland. However, as he got older his mistakes were more frequent. What really annoyed Ms. Dasher was that Wyland would tell her something and then he wouldn't promptly do it. (ECF#102-P.85/101) When Dr.  Ratnakar got involved she would see results from Wyland. If Dr. Ratnakar did not get involved, Dasher felt that Wyland just pushed her to the back burner. (ECF#102-P.87/101) Ms. Dasher did not know what Wyland told Dr. Ratnakar as an explanation for the things that occurred. (ECF#102-P.88/101)

### George Goetz

The Government called George Goetz as its next witness. Goetz is a gastroenterologist who work at WVGE beginning in 2011. (ECF#103-P.8/219) Goetz received his W-2 from Wyland. (ECF#103-P.21/219) Wyland often sent the W-2 late. (ECF#103-P.22/219) On two occasions Goetz asked Dr. Ratnakar to intervene. (ECF#103-P.22/219) The W-2 of Goetz reflected approximately $97,000 of withholding. (ECF#103-P.25/219) During 2017 to 2020 Social Security's records reflected zero contributions. (ECF#103-P.29/219) Goetz did not talk to anyone about it. (ECF#103-P.30/219) Goetz decided to retire so he went to the Social Security Office and they ultimately gave him credit for his withholdings. (ECF#103-P.31/219) Goetz was not certain that he ever had any discussions with Dr. Ratnakar about the Social Security withholdings. (ECF#103-P.31/219) Goetz never had problems with Dr. Ratnakar. (ECF#103-P.36/219) Goetz is still fighting with the IRS because they have no

record of certain amounts being paid. (ECF#103-P.41-42/219) Goetz does not know who caused this issue. (ECF#103-P.44/219)

### Daniel Shats

The final witness called by the United States was Daniel Shats. Shats met Dr. Ratnakar in 2011. (ECF#103-P.50/219) In 2012, he went to work for WVGE. The employment agreement provided that payroll taxes would be deducted from Shats' base salary. (ECF#103-P.54/219) Shats received a W-2 from WVGE. (ECF#103-P.54/219) When Shats had an issue he would contact Wyland. On one or two occasions when that did not yield results, Shats sent a text Dr. Ratnakar. Wyland then responded. (ECF#103-P.68/219) The IRS had no record of Shats paycheck deductions. ((ECF#103-P.74/219) Ratnakar suggested that Shats contact Wyland and he would get the issue straightened out. However, Shats refused and stated that he did not trust Wyland. (ECF#103-P.76/219) Shats hired his own accountant to solve his tax problem. (ECF#103-P.77/219) Shats needed a letter verifying his employment to resolve some of the issues he was having with the IRS. Shats received the requested letter from Wyland. (ECF#103-P.79/219). Shats admitted in his audio recording that his tax problems were mostly resolved after receipt of the letter. Shats received some W-2s from Wyland that were not correct but were promptly corrected by Wyland. (ECF#103-P.94/219) When Shats spoke to Dr. Ratnakar about his issues with the IRS, Dr. Ratnakar advised him that the IRS problems were caused by research and development tax credits. (ECF#103-P.100/219)

Following Shats' testimony, the Government rested its case. The record reflects that at their height Saneso and WVGE employed over 50 employees. The entities operated from

at least the beginning of 2018 through 2022. During that period of time Wyland prepared thousands of paychecks and prepared hundreds of W-2 forms. The errors or issues that were introduced into evidence by the Government were sporadic and not common. More importantly, this evidence has virtually no probative value with regard to whether Dr. Ratnakar knew that Wyland had been lying to him about timely filing the Form 941 tax returns of WVGE and Saneso and that the two entities did not owe any funds to the IRS because the research and development tax credits eliminated any payroll tax obligation during 2018 through 2022.

### Rule 29 Motion

Following the testimony of Shats, the Government rested. Dr. Ratnakar moved for judgment of acquittal pursuant to Rule 29. Counsel for Dr. Ratnakar argued that Counts One through Thirty-Eight, require the Defendant to willfully fail to pay over the taxes withheld. (ECF#103-P.117/219) The only person that testified on this subject was Wyland. Wyland said that it was his responsibility to pay over the funds and that Dr. Ratnakar did not know that Wyland did not prepare the payroll tax returns and did not pay over the funds. In fact, Wyland testified that he believed the research & development tax credits eliminated any tax obligation WVGE or Saneso had.

If the Jury believed Wyland, it was required to find Dr. Ratnakar not guilty and if the Jury did not believe Wyland, then there is a complete dearth of evidence on each of these counts and a Judgment of Acquittal is required. (ECF#103-P.117/219) The Court stated:

But I do think, in light of the fact the Court has to consider the evidence in a posture most favorable to the Government, that the obstruction evidence, in particular, helps build a bridge to intent and willfulness on Counts One through Thirty-Eight. And for those reasons the Court will deny the motion on those counts. (ECF#103-P.121/219)

During closing argument Counsel for the Government started by stating to the jurors that he now has an opportunity to help in trying to fit together all the evidence as a puzzle.

And in this case, the heart of the case is the obstruction of justice. That would be the corner pieces to the puzzle to make sure you can fit it all – the rest of it together. That's Count Forty-Two, as you just heard.  (ECF#108-P.3/57)

The defense agrees that the "heart of the case" was the obstruction of justice charge. The reason for that is clear, the testimony of the Government's sole substantive witness regarding the essential elements of the offenses alleged in Counts 1 through 41 of the indictment was accountant Glen Wyland and his uncontradicted testimony vindicated Dr. Ratnakar as to the charges contained in counts 1 through 41 of the indictment.  The jury found that there was insufficient evidence as to Count 42 to unanimously find Dr. Ratnakar guilty beyond a reasonable doubt. Since the jury found that the Government's evidence as to Count 42 was insufficient, the Government cannot rely upon such evidence to prove the charges contain in Counts 1 through 41 of the indictment because there is insufficient evidence to establish the essential element of willfulness on the part of Dr. Ratnakar.

The jury has implemented a form of "strict liability" in its verdict as to Counts 1 through 41. That improper analysis was applied as follows:

34

1. The employees received paychecks that had payroll taxes taken out;

2. The IRS did not have a record of receiving the payroll tax return and the payroll taxes;

3. Dr. Ratnakar owned the company and his name was stamped on each paycheck; and

4. He is therefore responsible and guilty no matter what his knowledge, intent, and willfulness may have been.

This is strict liability and while it may be appropriate in some civil cases dealing with dangerous instrumentalities, its application in this criminal tax case is inconsistent with the law and improper. Allowing this verdict to stand is inconsistent with the interest of justice. Defendant's renewed motion for judgment of acquittal pursuant to Rule 29 should be granted. Further, Defendant's motion for new trial pursuant to Rule 33 should be conditionally granted in deference to any appeal from the Rule 29 order.

Dr. Ratnakar called Debbie See, Maria Cominsky, Alexis Louk, Mark Doak, JW Wyatt, and Jay Nanavati to testify during his case in chief.

### Debbie See

Debbie See has been a registered nurse for 43 years. (ECF#103-P.131/219) Ms. See presently works at the Davis Medical Center. However, Ms. See worked at WVGE from 2015 through 2024. (ECF#103-P.132/219) During that period of time she has come to know Dr. Ratnakar's reputation as to honesty. Ms. See confirmed that Dr. Ratnakar is a very honest person and has a good reputation. (ECF#103-P.133/219) Ms. See testified that Wyland did the payroll. If an issue arose, Wyland normally fixed the issue. Ms. See stated

that Mary Dasher was a co-worker who could be difficult. (ECF#103-P.135/219) Dasher thought that Wyland should be fired. (ECF#103-P.136/219)

### Maria Cominsky

Maria Cominsky did the payroll for Valley commencing in or about 2012 through 2023. (ECF#103-P.145/219) Ms. Cominsky reported that the Valley payroll had no significant problems with the IRS. Valley bank accounts including the Main Street Bank account were hacked and the thief got away with a significant amount of money. (ECF#103-P.150/219) However, Ms. Cominsky did not know what steps were taken to avoid future financial losses from would be hackers.

### Alexis Louk

Ms. Louk testified that she is a manager at WVGE. (ECF#103-P.160/219) She stated that she has found Dr. Ratnakar to be an honest person. (ECF#103-P.160/219) Ms. Louk confirmed that Wyland was responsible for the payroll. (ECF#103-P.163/219) Ms. Louk stated that she went with another co-worker to see Wyland in order to retrieve Dr, Ratnakar's signature stamp. When they arrived Wyland made the following statement:

Q. And with regard to Glen Wyland, did he make any reference to Dr. Ratnakar at all?

A. Yes. He said that he hopes that him and Dr. Ratnakar can still be friends because Dr. Ratnakar did nothing wrong.

Q. And was there any response? Or did you leave? Or what did you do at that point?

A. It was just awkward silence, and we left. (ECF#103-P.164/219)

Alexis Louk stated that she never saw Dr. Ratnakar review any tax return. (ECF#103-P.168/219)

### Mark Doak

Dr. Ratnakar called Mark Doak as his next witness. (ECF#103-P.169/219) Mr. Doak is the CEO of the Davis Medical Center. (ECF#103-P.170/219) He stated that he has know Dr. Ratnakar from 2008 through 2024 and that during that period of time he has learned of his reputation as to honesty. (ECF#103-P.172/219)  Mr. Doak found Dr. Ratnakar to be a genuinely honest person. (ECF#103-P.173/219)

### JW Wyatt

Mr. JW Wyatt was the next witness. (ECF#103-P.176/219) Mr. Wyatt testified that he has known Dr. Ratnakar for approximately 15 years. (ECF#103-P.177/219)   During that period of time, he has found Dr. Ratnakar to be an honest person. (ECF#103-P.179/219)

### Jay Nanavati

Mr. Nanavati was called as the final witness. (ECF#103-P.187/219)  Mr. Nanavati testified that he is a lawyer at the Kostelanetz law firm. On or about May 24 and 26, 2023 his law firm received records from Saneso and WVGE in response to the grand jury subpoenas for records. The Kostelanetz law firm delivered the records electronically to the Government on June 5, 2023. The records included 941 tax returns from Saneso and WVGE. Following the testimony of Mr. Nanavati the defense rested its case.

## Conclusion

Dr. Ratnakar moves this Honorable Court, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for new trial on three grounds.

First, Dr. Ratnakar's Sixth Amendment right to a public trial was violated when the courtroom was closed to the public during the jury selection process. The rights in issue are structural in nature and require a new trial. *United States v. Agosto-Vega,* 617 F.3d 541 (1st Cir. 2010); *United States v. Gupta,* 699 F.3d 682, 686 (2nd Cir. 2011); *Presley v. Georgia,* 558 U.S. 209, (2010); and *Waller v. Georgia,* 467 U.S. 39 (1984).

Second, this Honorable Court erred when it granted the Motion in Limine to preclude Dr. Ratnakar from presenting evidence of his payment of taxes shortly after the Government apprised him of its allegations in October 2023, when the Dr. Ratnakar's reaction was relevant to the issues of intent and willfulness. This erroneous ruling denied Dr. Ratnakar a fair trial. See, *Cheek v. United States, 498 U.S. 192 (1991); Heindel v. United States,* 150 F. 2d 493, 497 (6th Cir. 1945); *United States v. Matot,* 146 F.2d 197, 198 (2nd Cir. 1944); *United States v. Wicoff,* 187 F.2d 886, 890-891 (7th Cir. 1951); *United States v. Klotz,* 792 F. Supp. 28 (M.D. PA 1992); *United States v. Stout,* 601 F.2d 325 (7th Cir. 1979); wherein the court stated that subsequent conduct was relevant to the issue of knowledge to file tax returns. *United States v. Thrush,* 2021 U.S. Dist. LEXIS 118742 (E.D. Mich. 2021); *United States v. Hill,* 363 F.2d 176, 180 (5th Cir. 1966); *United States v. Sperrazza,* 2013 U.S. Dist, LEXIS 77901 (M.D. Ga. 2013); and *Berkovitz v. United States,* 213 F.2d 468, 472 (5th Cir. 1954).

Third, the jury's verdict of not guilty as to Count 42 leaves the government with an indictment that charges crimes in Counts 1 through 41 that are not supported by its own evidence. The Government's own witness, Glen Wyland, contradicted each of the charges contained in Counts 1 through 41 of the indictment. Wyland's uncontradicted testimony established that Dr. Ratnakar did not have the requisite intent and willfulness to be guilty of these charges. In fact, he was the victim of Wyland's misrepresentations. The jury improperly converted the charge of willful failure to pay over payroll taxes into a form of strict liability.

WHEREFORE, Defendant, Nitesh Ratnakar, respectfully moves this Honorable Court to grant his motion for new trial.

Respectfully submitted,

*s/s David M. Garvin*
David M. Garvin
Pro Hac Vice Counsel for Defendant
David M. Garvin, P.A.
2333 Ponce De Leon Blvd.
Suite 314
Coral Gables, Florida 33134
Tel: 305-371-8101
Fax: 305-371-8848
Email: dgarvin@garvin.law
Email: ontrial2@gmail.com


*/s/ Harry A. Smith III*
Harry A. Smith III
Counsel for Nitesh Ratnakar
Jory & Smith LC
10 South Randolph Avenue
Elkins, West Virginia 26241
Tel: 304-636-3553
Email: hasmith@jorysmith.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 22, 2024, I electronically filed the foregoing motion for new trial with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

<u>/s/ Harry A. Smith, III</u>

Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                                    Action No. 2:24-CR-4

NITESH RATNAKAR,

      Defendant.

_____/

## SWORN STATEMENT OF MICHELLE RATNAKAR

Before me the undersigned authority authorized to administer oaths, personally appeared Michelle Ratnakar, who after being duly sworn, deposes and states:

1. I am the wife of Nitesh Ratnakar.

2. On November 12, 2024, the jury trial in the above case commenced before U.S. District Judge Thomas S. Kleeh.

3. I arrived at the courtroom on the morning of November 12, 2024, to find that my daughter was sitting on the bench outside the courtroom.

4. My daughter informed me that she was asked to wait outside the courtroom during the jury selection process by the court officer inside the courtroom, when she attempted to have a seat in the courtroom.

5.  I wanted to double check this with the deputy U.S. Marshal stationed outside the courtroom door.

6.  When I approached, the deputy marshal informed me that I was not allowed into the courtroom during the jury selection process, and that I had to either wait outside the courtroom or go out of the courthouse and return when the jury selection process was completed.

7.  I understood it to be a court procedure that I was required to comply with, just as I was required to comply with any other court procedure.

8.  I sat outside the courtroom until the jury selection process was finished.  I did not mention to my husband nor to his lawyers that I was excluded from the courtroom during jury selection.

9.  I was allowed into the courtroom and was able to attend the trial after the jury selection process was over.

10. On November 19, 2024, the jury returned its verdict.

11. Following the verdict there was a great deal of disappointment.

12. Sometime after the trial ended, we, as a family, discussed several things related to the trial; at that time I mentioned to my husband that I was not allowed into the courtroom during the jury selection process until after the jury selection process was completed. He was unaware of this issue prior to that time.

Under penalties of perjury, I declare to the best of my knowledge and belief, the information contained in this sworn statement is true, correct, and complete.

Michelle Ratnakar

### NOTARY

STATE OF WEST VIRGINIA)

COUNTY OF RANDOLPH)

I hereby certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appear Michelle Ratnakar known to me to be the person described in and who executed the foregoing instrument, who acknowledged before me that he executed the same, and an oath was taken. Said person provided the following type of identification: W.Va. Drivers License.

Notary Rubber Stamp Seal

Witness my hand and official seal in the County and State last aforesaid this 22nd day of December, 2024.

Cheryl L. Basil

Notary Signature



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Cheryl L. Basil
1118 South Kerens Ave.
Elkins, WV 26241
My Commission Expires Dec. 19, 2029

Cheryl L. Basil

Printed Name

Exhibit "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                                              Action No. 2:24-CR-4

NITESH RATNAKAR,

        Defendant.

_____/

## **SWORN STATEMENT OF SARAH RATNAKAR**

Before me the undersigned authority authorized to administer oaths, personally

appeared Sarah Ratnakar, who after being duly sworn, deposes and states:

1. I am the daughter of Nitesh Ratnakar; I am eighteen years old.

2. On November 12, 2024, the jury trial in the above case before U.S. District Judge Thomas S. Kleeh commenced.

3. I entered the courtroom with the prospective jurors on the morning of November 12, 2024.

4. A court officer checked my name against the list of the potential jurors and ascertained that I was not one of the potential jurors.

5. I was asked to leave the courtroom by the court officer.

6. I was told that I was not allowed to stay in the courtroom during the jury selection process.

7. I understood it to be a normal court procedure and I complied.

8. I sat outside the courtroom until the jury selection process was finished.

9. I was allowed into the courtroom after the jury selection process was over. I did not mention to my father nor to his lawyers that I was excluded from the courtroom during jury selection.

10. I attended the trial that afternoon on November 12, 2024, and then again on the last day of the trial, November 19, 2024. I did not attend the trial on the other days.

11. During the trial, I did not spend much time with my father as I attended school in Wheeling and my father stayed in Elkins.

12. On November 19, 2024, the jury returned its verdict of guilty.

13. Following the verdict, I was disappointed. Later, I had discussions with my family after the trial was over regarding my observations during the time I attended the trial, at which time I told my father for the first time that I was asked to leave the courtroom before the jury selection process held on Tuesday morning November 12, 2024, and was not allowed to be in the courtroom until the jury selection process was completed.

Under penalties of perjury, I declare to the best of my knowledge and belief, the

information contained in this sworn statement is true, correct, and complete.

_Sarah Ratnakar_

Sarah Ratnakar

### NOTARY

STATE OF WEST VIRGINIA)

COUNTY OF RANDOLPH)

I hereby certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appear Sarah Ratnakar known to me to be the person described in and who executed the foregoing instrument, who acknowledged before me that he executed the same, and an oath was taken. Said person provided the following type of identification: W.Va. Drivers License.

Notary Rubber Stamp Seal

Witness my hand and official seal in the

County and State last aforesaid

this 22nd day of December, 2024.



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Cheryl L. Basil
1118 South Kerens Ave.
Elkins, WV 26241
My Commission Expires Dec. 19, 2029

_Cheryl L. Basil_

Notary Signature

Cheryl L. Basil
Printed Name

# Exhibit "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA,


v.                                                    Action No. 2:24-CR-4


NITESH RATNAKAR,

      Defendant.

_____/


## SWORN STATEMENT OF NITESH RATNAKAR


Before me the undersigned authority authorized to administer oaths, personally appeared Nitesh Ratnakar, who after being duly sworn, deposes and states:

1. I am the named defendant in the above-styled case.

2. On November 12, 2024, the jury trial in my case before U.S. District Judge Thomas S. Kleeh commenced in the courtroom at approximately 9:15 am.

3. My family came to the courthouse that morning to watch my trial.

4. During the course of my trial, I concentrated on assisting my lawyers by reviewing exhibits and outlining potential witness's interviews.

5. On November 19, 2024, the jury returned its verdict of guilty on counts one through 41.

6. Following the verdict there was a great deal of disappointment. I had extended discussions with my family regarding a basis to appeal.

7. During these discussions I was told that my family was not permitted to watch the jury selection process held on Tuesday morning, November 12, 2024.

8. They were told that they had to remain out of the courtroom until the jury had been selected.

9.  I did not know that they were prevented from observing the jury selection process until they told me.

10. They told me that they did not say anything about it to anyone because they thought that they were just following the rules.

11. I never agreed to close the jury selection in my case from the public.

Under penalties of perjury, I declare to the best of my knowledge and belief, the information contained in this sworn statement is true, correct, and complete.

_____

Nitesh Ratnakar

<u>NOTARY</u>

STATE OF WEST VIRGINIA)

COUNTY OF RANDOLPH)

I hereby certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appear Nitesh Ratnakar known to me to be the person described in and who executed the foregoing instrument, who acknowledged before me that he executed the same, and an oath was taken. Said person provided the following type of identification: West Virginia Driver's License.

Notary Rubber Stamp Seal

Witness my hand and official seal in the County and State last aforesaid this 22nd day of December, 2024.

*Cheryl L. Basil*

Notary Signature

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Cheryl L. Basil
1118 South Kerens Ave.
Elkins, WV 26241
My Commission Expires Dec. 19, 2029

<u>Cheryl L. Basil</u>
Printed Name

# Exhibit "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                          Criminal Action No. 2:24-CR-4

NITESH RATNAKAR,

　　　　Defendant.

_____/

## SWORN STATEMENT OF DAVID M. GARVIN

Before me the undersigned authority, authorized to administer oaths, personally appeared David M. Garvin, who after being duly sworn, deposes and states:

1. I am a lawyer for Nitesh Ratnakar in the above styled case.

2. On November 12, 2024, the jury trial in this case before the Honorable Thomas S. Kleeh commenced.

3. At approximately 9:30 am the jury selection process began.

4. This was my first jury trial before Judge Kleeh. I did not know the routine practice of the courtroom staff.

5. During the jury selection process the lawyers and Dr. Ratnakar were seated at the table located in the well of the courtroom.

6. I did not notice when visitors came or went because I was concentrating on selecting a jury.

7. On November 19, 2024, the jury returned its verdict of guilty on counts 1 through 41.

8. Several days after the conclusion of the trial, Dr. Ratnakar notified me that he had just learned from his wife and daughter that they were not permitted into the courtroom during the jury selection process.

9. Prior to Dr. Ratnakar notifying me, I did not know that his family members had been prevented from observing the jury selection process.

10. I understand that Dr. Ratnakar's wife and daughter did not say anything about it to anyone because they thought that they were just following the rules.

11. Dr. Ratnakar and his lawyers never agreed to close the jury selection in his case from the public.

Under penalties of perjury, I declare to the best of my knowledge and belief, the information contained in this sworn statement is true, correct, and complete.

David M. Garvin

## NOTARY

STATE Florida )

COUNTY OF Miami-Dade )

I hereby certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appear David M. Garvin known to me to be the person described in and who executed the foregoing instrument, who acknowledged before me that he executed the same, and an oath was taken. Said person provided the following type of identification:   Florida Driver's License.

Notary Rubber Stamp Seal



NADJA A. PRIAS
MY COMMISSION # HH 252284
EXPIRES: July 31, 2028

Witness my hand and official seal in the

County and State last aforesaid

this 22nd day of December, 2024.

Notary Signature

Nadja Prias
Printed Name

Exhibit "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                                        Criminal Action No. 2:24-CR-4

NITESH RATNAKAR,

     Defendant.

### SWORN STATEMENT OF HARRY A. SMITH, III

Before me, the undersigned authority authorized to administer oaths, personally appeared

Harry A. Smith, III who, after being duly sworn, deposes and states:

1.  I am a lawyer for Nitesh Ratnakar in the above-styled case.

2.  On November 12, 2024, the jury trial in this case before the Honorable Thomas S. Kleeh

commenced at approximately 9:15 a.m.

3.  At approximately 9:30 a.m., the jury selection process began.

4.  This was my first jury trial before Judge Kleeh and I did not know the routine practice

of the courtroom staff.

5.  During the jury selection process, Dr. Ratakar and his lawyers were seated at the table

located in the well of the courtroom.

6.  I did not notice when visitors came or went because I was concentrating on selecting

a jury.

7.  On November 19, 2024, the jury returned its verdict.

8.  I have been advised, by David M. Garvin, also counsel for Dr. Ratnakar, that Dr.

Ratnakar had notified him, several days subsequent to the conclusion of the trial, that Dr. Ratnakar had just learned, from his wife and daughter, that they were not permitted in the courtroom during the jury selection process.

9.    Prior to my said communication with Mr. Garvin, I did not know that Dr. Ratnakar's family members had been prevented from observing the jury selection process.

10.    I have also been advised, by Mr. Garvin, that Dr. Ratnakar told him that his wife and daughter did not say anything to anyone about the jury selection process because they thought that they were just following the rules.

11.    Neither Dr. Ratnakar nor his lawyers agreed to close the jury selection from the public in his case.

Under penalties of perjury I declare to the best of my knowledge and belief, the information contained in this sworn statement is true, correct, and complete.

_____
HARRY A. SMITH, III


STATE OF WEST VIRGINIA,

COUNTY OF RANDOLPH, TO-WIT:

The foregoing was acknowledged before me this 22nd day of December, 2024, by HARRY A. SMITH, III.

My commission expires _____12 - 19 - 29_____.

_____
NOTARY PUBLIC



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Cheryl L. Basil
1118 South Kerens Ave.
Elkins, WV 26241
My Commission Expires Dec. 19, 2029

2

Exhibit "F"

# C&G Tax Services Inc.

May 21, 2018

Internal Revenue Service
150 Court Street
Charleston  WV  25301

Att: Elizabeth Granados

**Ref.**   **West Virginia Gastroenterology & Endoscopy Inc. FEIN** ████ **7220**

Dear Ms. Granados:

Please recall our conversation in mid April regarding my client referenced above.

You advised us of 4 pending amounts with IRS in the amounts of $294.00, $500.00, $3,217.50 and $7,219.09 which would bring our account current with the IRS. These requested amounts were all paid in full within the agreed upon timeframe before May 10, 2018 (proof attached).

You had then released the levy with the Huntington National Bank on May 09, 2018 and released the levy in the amount of $18,658.19 and we thank you for that.

However, there was pending levy with Department of Health and Human Services at the time you advised us to make the above referenced payments. Department of Health and Human Services has sent payments to the IRS in addition to what we had paid on your request and as such there are duplicate payments for the same issue. The details of these payments are as below (proof of which are attached with this letter):

| | | |
|---|---|---|
| 4/22/2018 | Department of Health & Human Services | $112.82 |
| 4/22/2018 | Department of Health & Human Services | $112.82 |
| 4/24/2018 | Department of Health & Human Services | $675.11 |
| 4/25/2018 | Department of Health & Human Services | $270.82 |
| 4/29/2018 | Department of Health & Human Services | $4,873.71 |

DEFENDANT'S EXHIBIT

55

Case No. 2:24-CR-04-(KLEEH)

████████ , Elkins WV 26241     Phone: ████ 4106  Fax: ████ 0166

D-004439

| | | |
|---|---|---|
| 5/1/2018 | Department of Health & Human Services | $522.23 |
| 5/2/2018 | Department of Health & Human Services | $383.95 |
| 5/3/2018 | Department of Health & Human Services | $2,708.20 |
| 5/10/2018 | Department of Health & Human Services | $2,783.35 |
| | Total | **$12,443.01** |

We would request that you please release this excess payment of $12,443.01 to my client as we had already complied with your instructions and made the payment as requested. Should you have questions or need additional information, please contact us. Thank you for your consideration and assistance.

Sincerely and Respectfully,

Glen Wyland
Accountant
West Virginia Gastroenterology and Endoscopy Inc.

Enclosure:

a) Payments made pursuant to your instructions.
b) Payments made by Department of Health and Human Services
c) Release of levy for Huntington National Bank and refund of levy hold by Huntington National Bank
d) Release of Levy for Palmetto GBA

1950 Harrison ███ Elkins WV 26241     Phone: ███ 4106  Fax: ███ 0166

D-004440

5/19/2018

 **Huntington**

Printer Friendly Version

Welcome:

## Transaction Details

Research Transaction

Item Number
0
Item Type
Electronic Debit
Amount
-$294.00
Date
04/30/2018
Description
IRS USATAXPYMT04301827085200582 3276
Payee

New Payee

Tag

New Tag

D-004441

5/19/2018



Printer Friendly Version

Welcome:

## Transaction Details

Research Transaction

Item Number
0
Item Type
Electronic Debit
Amount
-$500.00
Date
04/30/2018
Description
IRS USATAXPYMT043018270852093958260
Payee

New Payee

Tag

New Tag

D-004442

5/19/2018



Welcome:

## Transaction Details

Research Transaction

Item Number
0
Item Type
Electronic Debit
Amount
-$3,217.50
Date
05/04/2018
Description
IRS USATAXPYMT05041827085249587l374
Payee

New Payee

Tag

New Tag

D-004443

Printer Friendly Version

5/19/2018

 **Huntington**

Welcome:

**Transaction Details**

Research Transaction

Item Number
0
Item Type
Electronic Debit
Amount
-$7,219.09
Date
05/04/2018
Description
IRS USATAXPYMT05041827085240 2975027
Payee

New Payee

Tag

New Tag

Printer Friendly Version

D-004444

1/1

05/09/2018 12:50:17 PM -0400 IRS

PAGE 3   OF 4

Form 668-D
(Rev. April 2012)

Department of the Treasury - Internal Revenue Service

# Release of Levy/Release of Property from Levy

To

HUNTINGTON NATIONAL BANK

█████████

COLUMBUS, OH 43219

Taxpayer(s)
WEST VIRGINIA GASTROENTEROLOGY &
ENDOSCOPY PLLC
NITESH RATNAKAR SOLE MBR
█████████
ELKINS, WV 26241-2831317

Identifying Number(s)
████7220

A notice of levy was served on you and demand was made for the surrender of:

☒ all property, rights to property, money, credits and bank deposits of the taxpayer(s) named above, except as provided in 6332(c) of the Internal Revenue Code--"Special Rule For Banks." See Page 2 regarding this exception.

☐ wages, salary and other income, now owed to or becoming payable to the taxpayer(s) named above.

**The box checked below applies to the levy we served on you.**

# Release of Levy

☒ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits of the taxpayer(s) named above are released from the levy.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

# Release of Property from Levy

☐ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits greater than  are released from the levy. The levy now attaches only to this amount.

☐ Under the provision of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits up to the amount of _ are released from the levy. The levy continues to attached to all amounts greater than _.

☐ The last payment we received from you was  dated _. The amount the taxpayer still owes is . When this amount is paid to the Internal Revenue Service, the levy is released. If you sent us a payment after the last payment date shown, subtract that from the amount you send now.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income ☐ greater than ☐ less than  each _ now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

Dated at  CHARLESTON, WV.
       (Place)

May 08, 2018
(Date)

| Signature
ELIZABETH G GRANADOS | Telephone Number
████3046 | Title
REVENUE OFFICER |

Part 1 - To Addressee

Form 668-D (DO/CG) (Rev. 4-2012)

D-004445

05/09/2018 12:50:17 PM -0400 IRS

PAGE 4   OF 4

| Form **668-D** (Rev. April 2012) | Department of the Treasury - Internal Revenue Service |
|---|---|

# Release of Levy/Release of Property from Levy

| To | Taxpayer(s) |
|---|---|
| PALMETTO GBA LLC <br> ▮▮▮▮▮▮▮▮ <br> CAMDEN, SC 29020 | WEST VIRGINIA GASTROENTEROLOGY & ENDOSCOPY PLLC <br> NITESH RATNAKAR SOLE MBR <br> ▮▮▮▮▮▮ <br> ELKINS, WV 26241-2831317 <br><br> Identifying Number(s) <br> ▮▮▮▮7220 |

A notice of levy was served on you and demand was made for the surrender of:

☒ all property, rights to property, money, credits and bank deposits of the taxpayer(s) named above, except as provided in 6332(c) of the Internal Revenue Code--"Special Rule For Banks." See Page 2 regarding this exception.

☐ wages, salary and other income, now owed to or becoming payable to the taxpayer(s) named above.

**The box checked below applies to the levy we served on you.**

# Release of Levy

☒ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits of the taxpayer(s) named above are released from the levy.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

# Release of Property from Levy

☐ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits greater than   are released from the levy. The levy now attaches only to this amount.

☐ Under the provision of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits up to the amount of   are released from the levy. The levy continues to attached to all amounts greater than   .

☐ The last payment we received from you was   dated  . The amount the taxpayer still owes is  . When this amount is paid to the Internal Revenue Service, the levy is released. If you sent us a payment after the last payment date shown, subtract that from the amount you send now.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income ☐ greater than ☐ less than ☐ each _ now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

Dated at CHARLESTON, WV.
    (Place)

May 08, 2018
    (Date)

| Signature <br> ELIZABETH G GRANADOS | Telephone Number <br> ▮▮▮▮3046 | Title <br> REVENUE OFFICER |
|---|---|---|

Part 1 - To Addressee

Form 668-D (DO/CG) (Rev. 4-2012)

D-004446

Exhibit "G"

# C&G Tax Services Inc.

June 9, 2016

Nitesh Ratnakar
Saneso Inc. & WW Gastroenterology

Ref.    R&D Tax Credits

Dr. Ratnakar,

R&D credits are available to companies engaged in research and development of new products and processes. Recently passed PATH act made these credits permanent. These credits can be applied dollar for dollar towards corporate income, pass through income and all company payroll taxes. We will be happy to assist with these in case your company proceeds with R&D of the new medical endoscope.

Should you have questions or need additional information, please contact us. Thank you for your consideration and assistance.

Sincerely and Respectfully,

Glen Wyland
Accountant



DEFENDANT'S EXHIBIT
46
Case No. 2:24-CR-04-(KLEEH)

Elkins WV 26241    Phone: 4106  Fax: 0166

Exhibit "H"

# C & G TAX SERVICES

████ 4106                                                    ELKINS, WV  26241

October 26, 2020

RE;  Saneso and WV Gastroenterology

Dr.  Ratnakar:

We had previously discussed the federal program known as the PAYROLL PROTECTION PROGRAM (PPP) that may be helpful to your companies during the Covid pandemic economic slowdown.  I believe and have conveyed to you that it is our best course to continue as we are by utilizing R & D credits available currently.

I would be pleased to discuss this matter further at any time if you wish to do so.

Sincerely and Respectfully.

Glen Wyland
ACCOUNTANT

DEFENDANT'S
EXHIBIT
47
Case No: 2:24-CR-04-(KLEEH)

D-004987

# Exhibit "I"



**C & G TAX SERVICES**

ELKINS, WV 26241

August 31, 2022

RE: Sineso and WV Gastroenterology

Dr. Ratnakar:

There is a new federal program known as the EMPLOYEE RETENTION CREDIT PROGRAM (ERC) that may be helpful to your companies. Information is still becoming available at this time. Although I believe we would be eligible for the credit, I believe we should continue to use existing credits available for research and development and perhaps revisit the ERC when more information on it becomes known.

I would be pleased to discuss this matter further if you wish to do so.

Sincerely and Respectfully,

Glen Wyland

Accountant

DEFENDANT'S
EXHIBIT
48
Case No. 2:24-CR-00-4(KLEEH)

Exhibit "J"





Department of the Treasury
Internal Revenue Service
Holtsville, NY  11742-0480

**IRS**



| Notice | CP259 |
|---|---|
| Tax period | September 30, 2019 |
| Notice date | March 23, 2020 |
| Employer ID number | ███7220 |
| Select code | 02 |
| Page 3 of 4 | |





INTERNAL REVENUE SERVICE
HOLTSVILLE, NY  11742-0480

110383



0222*

Fold here

# Response form for Form 941

If you don't think you have to file, complete both sides of this form. Mail to us using the enclosed envelope or fax it to 855-800-5944. Be sure our address shows through the window. You can call us at the number at the top of this notice and tell us why you don't think you have to file instead of returning this form.

## Provide your contact information

If your address has changed, please provide the current address below.
WEST VIRGINIA GASTROENTEROLOGY &
NITESH RATNAKAR SOLE MBR
████████
ELKINS  WV  26241-2831

| Primary phone | Best time to call | Secondary phone | Best time to call |
|---|---|---|---|
| | ☐ a.m. ☐ p.m. | | ☐ a.m. ☐ p.m. |

## 1. Indicate whether any of the following circumstances apply to you

If you don't think you have to file a tax return for the tax period ending on September 30, 2019

Explain why you don't think you are required to file a tax return for September 30, 2019.

☐ My business ceased operations on: _____.
☐ I didn't pay wages to employees during this period.
☐ My business no longer has any employees and doesn't expect to pay wages in the future.  Last date wages paid: _____.
☐ I reported all wages on Form 943/944.  (Please attach a signed copy of the Form 943/944 return).
☐ Other reason for not filing (explain below; attach additional sheets if necessary).

_____

_____

_____

_____

_____

_____

_____

D-004974

DEFENDANT'S EXHIBIT 73
Case No. 2:24-CR-04-KLEEH

Continued on back...

Q3 2019 - Notice to File - 03-2020.pdf
527K

**Nitesh Ratnakar**
To: Glen wyland                                                    Sun, May 17, 2020 at 1:59 PM

Glen, Any update on this?
[Quoted text hidden]

D-004975

Exhibit "K"

29141 255 174 30 9

**Form 941 for 2019:** Employer's QUARTERLY Federal Tax Return
(Rev. January 2019)    Department of the Treasury — Internal Revenue Service

1903    950117

OMB No. 1545-0029

Employer Identification number (EIN) 2 7 – 2 0 8 7 2 2 0

Name (not your trade name) **WV GASTROENTEROLOGY & ENDOSCOPY**

Trade name (if any)

Address **PO BOX 2831**
Number    Street    Suite or room number

**ELKINS**    **WV**    **26241**
City    State    ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2019**
(Check one.)

- [X] 1: January, February, March
- [ ] 2: April, May, June
- [ ] 3: July, August, September
- [ ] 4: October, November, December

Go to www.irs.gov/Form941 for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:    Answer these questions for this quarter.**

| | | |
|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: Mar. 12 (Quarter 1), June 12 (Quarter 2), Sept. 12 (Quarter 3), or Dec. 12 (Quarter 4) | 1    6 |
| 2 | Wages, tips, and other compensation | 2    34166 . 00 |
| 3 | Federal income tax withheld from wages, tips, and other compensation | 3    3477 . 00 |

4 If no wages, tips, and other compensation are subject to social security or Medicare tax    [ ] Check and go to line 6.

| | | Column 1 | Column 2 |
|---|---|---|---|
| 5a | Taxable social security wages | 34166 . × 0.124 = | 4236 . 58 |
| 5b | Taxable social security tips | . × 0.124 = | . |
| 5c | Taxable Medicare wages & tips | 34166 . × 0.029 = | 990 . 82 |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . × 0.009 = | . |

| | | |
|---|---|---|
| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d | 5e    5227 . 40 |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) | 5f    . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f | 6    8704 . 40 |
| 7 | Current quarter's adjustment for fractions of cents | 7    . |
| 8 | Current quarter's adjustment for sick pay | 8    . |
| 9 | Current quarter's adjustments for tips and group-term life insurance | 9    . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 | 10    8704 . 40 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | 11    . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 | 12    8704 . 40 |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | 13    8704 . 40 |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions | 14    0 . 00 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference    0 . 00 Check one: [ ] Apply to next return. [ ] Send a refund. | |

Internal Revenue Service
RECEIVED
AUG 2 8 2019
SB/SE
Bridgeport WV

► You MUST complete both pages of Form 941 and SIGN it.

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.    Cat. No. 17001Z    Form **941** (Rev. 1-2019)

Government Exhibit 5

RECEIVED BY IRS-EFFS    8:19PM (GMT-05:00)

US001273

EXHIBIT 5 - US001273 - F941 - 201903 - WVGE / 1    EXHIBIT 5 - US001273 - F941 - 201903 - WVGE

29141 255 174 30 9

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| WV GASTROENTEROLOGY & ENDOSCOPY | 27-2087220 |

**Part 2:** Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16  Check one:
☐ Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below. If you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☐ You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

Tax liability:  Month 1 ☐ _____ .

Month 2 ☐ _____ .

Month 3 ☐ _____ .

Total liability for quarter ☐ _____ .    Total must equal line 12.

☒ You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

**Part 3:** Tell us about your business. If a question does NOT apply to your business, leave it blank.

17  If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . ☐ Check here, and

enter the final date you paid wages  / /

18  If you are a seasonal employer and you don't have to file a return for every quarter of the year . . . ☐ Check here.

**Part 4:** May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number _____    _____

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.  ☐ ☐ ☐ ☐ ☐

☐ No.

**Part 5:** Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

X  Sign your name here  *Glen Wyland*

Print your name here  Glen Wyland

Print your title here  Accountant

Date  04/15/19

Best daytime phone  304-637-4106

**Paid Preparer Use Only**    Check if you are self-employed . . . ☐

| Preparer's name | | PTIN | |
|---|---|---|---|
| Preparer's signature | | Date | / / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | State | ZIP code | |

Page 2    Form **941** (Rev. 1-2016)

RECEIVED BY IRS-EFFAX    08/27/2019 8:44PM (GMT-05:00)

EXHIBIT 5 - US001273 - F941 - 201903 - WVGE / 2        EXHIBIT 5 - US001273 - F941 - 201903 - WVGE-002

29141 255 174 30 9

# Schedule B (Form 941):
## Report of Tax Liability for Semiweekly Schedule Depositors
(Rev. January 2017)  Department of the Treasury — Internal Revenue Service

960311

OMB No. 1545-0029

Employer Identification number (EIN): 2 7 – 2 0 8 7 2 2 0

Name (not your trade name): WV GASTROENTEROLOGY & ENDOSCOPY

Calendar year: 2 0 1 9   (Also check quarter)

**Report for this Quarter...**
(Check one.)
- [X] 1: January, February, March
- [ ] 2: April, May, June
- [ ] 3: July, August, September
- [ ] 4: October, November, December

Use this schedule to show your TAX LIABILITY for the quarter; don't use it to show your deposits. When you file this form with Form 941 or Form 941-SS, don't change your tax liability by adjustments reported on any Forms 941-X or 944-X. You must fill out this form and attach it to Form 941 or Form 941-SS if you're a semiweekly schedule depositor or became one because your accumulated tax liability on any day was $100,000 or more. Write your daily tax liability on the numbered space that corresponds to the date wages were paid. See Section 11 in Pub. 15 for details.

### Month 1

| # | | # | | # | | # | |
|---|---|---|---|---|---|---|---|
| 1 | | 9 | | 17 | | 25 | |
| 2 | | 10 | 1245 . 25 | 18 | | 26 | |
| 3 | | 11 | | 19 | | 27 | |
| 4 | | 12 | | 20 | | 28 | |
| 5 | | 13 | | 21 | | 29 | |
| 6 | | 14 | | 22 | | 30 | |
| 7 | | 15 | | 23 | | 31 | |
| 8 | | 16 | | 24 | 1352 . 65 | | |

Tax liability for Month 1: 2597 . 90

### Month 2

| # | | # | | # | | # | |
|---|---|---|---|---|---|---|---|
| 1 | | 9 | | 17 | | 25 | |
| 2 | | 10 | | 18 | | 26 | |
| 3 | | 11 | | 19 | | 27 | |
| 4 | | 12 | | 20 | | 28 | |
| 5 | | 13 | | 21 | 1328 . 00 | 29 | |
| 6 | | 14 | | 22 | | 30 | |
| 7 | 1326 . 25 | 15 | | 23 | | 31 | |
| 8 | | 16 | | 24 | | | |

Tax liability for Month 2: 2654 . 25

### Month 3

| # | | # | | # | | # | |
|---|---|---|---|---|---|---|---|
| 1 | | 9 | | 17 | | 25 | |
| 2 | | 10 | | 18 | | 26 | |
| 3 | | 11 | | 19 | | 27 | |
| 4 | | 12 | | 20 | | 28 | |
| 5 | | 13 | | 21 | 1732 . 00 | 29 | |
| 6 | | 14 | | 22 | | 30 | |
| 7 | 1720 . 25 | 15 | | 23 | | 31 | |
| 8 | | 16 | | 24 | | | |

Tax liability for Month 3: 3452 . 25

Fill in your total liability for the quarter (Month 1 + Month 2 + Month 3) ▶
Total must equal line 12 on Form 941 or Form 941-SS.

Total liability for the quarter: 8704 . 40

For Paperwork Reduction Act Notice, see separate instructions.   IRS.gov/form941   Cat. No. 11967Q   Schedule B (Form 941) (Rev. 1-2017)

RECEIVED BY IRS-EEFAX   08/27/2019 8:49AM (GMT-05:00)

US001275

# Exhibit "L"



# Form **941 for 2019:** Employer's QUARTERLY Federal Tax Return

(Rev. January 2019)    Department of the Treasury — Internal Revenue Service

OMB No. 1545-0029

950117

**Employer identification number (EIN)** 2 7 – 2 0 8 7 2 2 0

**Name** (not your trade name) WV GASTROENTEROLOGY & ENDOSCOPY

**Trade name** (if any)

**Address** PO BOX 2831
Number    Street    Suite or room number

ELKINS    WV    26241
City    State    ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2019**
(Check one.)

- [ ] 1: January, February, March
- [X] 2: April, May, June
- [ ] 3: July, August, September
- [ ] 4: October, November, December

Go to *www.irs.gov/Form941* for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

## Part 1:    Answer these questions for this quarter.

| | | |
|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: *Mar. 12* (Quarter 1), *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4) | **1** 6 |
| 2 | Wages, tips, and other compensation | **2** 33049 . 50 |
| 3 | Federal income tax withheld from wages, tips, and other compensation | **3** 2671 . 00 |
| 4 | If no wages, tips, and other compensation are subject to social security or Medicare tax | [ ] Check and go to line 6. |

| | | Column 1 | | Column 2 |
|---|---|---|---|---|
| 5a | Taxable social security wages | 33049 . 50 × 0.124 = | | 4098 . 14 |
| 5b | Taxable social security tips | . × 0.124 = | | . |
| 5c | Taxable Medicare wages & tips | 33049 . 50 × 0.029 = | | 958 . 43 |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . × 0.009 = | | . |

| | | |
|---|---|---|
| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d | **5e** 5056 . 57 |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) | **5f** . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f | **6** . |
| 7 | Current quarter's adjustment for fractions of cents | **7** . |
| 8 | Current quarter's adjustment for sick pay | **8** . |
| 9 | Current quarter's adjustments for tips and group-term life insurance | **9** . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 | **10** 7727 . 57 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | **11** 0 . 00 |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 | **12** 7727 . 57 |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | **13** 7727 . 90 |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions | **14** 0 . 00 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference 0 . 33 Check one: [X] Apply to next return. [ ] Send a refund. | |

Internal Revenue Service
RECEIVED
SEP 03 2019
SB/SE
Bridgeport WV

SEP 10 2019

Received in Batching Ogden

▶ You MUST complete both pages of Form 941 and SIGN it.    Next ▶

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.    Cat. No. 17001Z    Form **941** (Rev. 1-2019)

Government Exhibit 6

US001276

EXHIBIT 6 - US001276 - F941 - 201906 - WVGE / 1    EXHIBIT 6 - US001276 - F941 - 201906 - WVGE

000121 - 29141 255

950217

| Name (not your trade name) | Employer Identification number (EIN) |
|---|---|
| WV GASTROENTEROLOGY & ENDOSCOPY | 27-2087220 |

**Part 2:** Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16  Check one:  ☐  Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☐  You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

Tax liability:  Month 1  [                    ] •

Month 2  [                    ] •

Month 3  [                    ] •

Total liability for quarter  [                    ] •   Total must equal line 12.

☒  You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

**Part 3:**  Tell us about your business. If a question does NOT apply to your business, leave it blank.

17  If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . . . . ☐ Check here, and

enter the final date you paid wages  [   /   /   ]

18  If you are a seasonal employer and you don't have to file a return for every quarter of the year  . . . .  ☐ Check here.

**Part 4:**  May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes.  Designee's name and phone number  [                              ]

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.  [ ] [ ] [ ] [ ] [ ]

☐ No.

**Part 5:**  Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

X  Sign your name here  *[signature]*

| Print your name here | G. WYLAND |
|---|---|
| Print your title here | ACCT. |

Date  02 / 19 / 2019          Best daytime phone  3046374106

**Paid Preparer Use Only**          Check if you are self-employed  ☐

| Preparer's name | C & G TAX SERVICES | PTIN | P01260771 |
|---|---|---|---|
| Preparer's signature | *[signature]* | Date | 02 / 19 / 2019 |
| Firm's name (or yours if self-employed) | C & G TAX SERVICES | EIN | — |
| Address | 1950 Harrison AVENUE | Phone | 3046374106 |
| City | ELKINS | State WV  ZIP code | 26241 |

Page 2          Form **941** (Rev. 1-2016)

000122 - 29141 255

# Schedule B (Form 941):
## Report of Tax Liability for Semiweekly Schedule Depositors

(Rev. February 2005)            Department of the Treasury — Internal Revenue Service

960305

OMB No. 1545-0029

(EIN)
Employer identification number: 2 7 – 2 0 8 7 2 2 0

Name (not your trade name): WV GASTROENTEROLOGY & ENDOSCOPY

Calendar year: 2 0 1 9                                    (Also check quarter)

Report for this Quarter...
(Check one.)

- [ ] 1: January, February, March
- [x] 2: April, May, June
- [ ] 3: July, August, September
- [ ] 4: October, November, December

Use this schedule to show your TAX LIABILITY for the quarter; DO NOT use it to show your deposits. When you file this form with Form 941 (or Form 941-SS), DO NOT change your tax liability by adjustments reported on any Forms 941-X. You must fill out this form and attach it to Form 941 (or Form 941-SS) if you are a semiweekly schedule depositor or became one because your accumulated tax liability on any day was $100,000 or more. Write your daily tax liability on the numbered space that corresponds to the date wages were paid. See Section 11 in Pub. 15 (Circular E), Employer's Tax Guide, for details.

**Month 1**

| 1 | 9 | 17 | 25 | Tax liability for Month 1 |
|---|---|----|----|---|
| 2 | 10  1237 . 45 | 18 | 26 | |
| 3 | 11 | 19 | 27 | 2501 . 35 |
| 4 | 12 | 20 | 28 | |
| 5 | 13 | 21 | 29 | |
| 6 | 14 | 22 | 30 | |
| 7 | 15 | 23 | 31 | |
| 8 | 16 | 24  1264 . 50 | | |

**Month 2**

| 1 | 9 | 17 | 25 | Tax liability for Month 2 |
|---|---|----|----|---|
| 2 | 10 | 18 | 26 | |
| 3 | 11 | 19 | 27 | 2505 . 58 |
| 4 | 12 | 20 | 28 | |
| 5 | 13 | 21 | 29 | |
| 6 | 14 | 22  1264 . 50 | 30 | |
| 7 | 15 | 23 | 31 | |
| 8  1241 . 08 | 16 | 24 | | |

**Month 3**

| 1 | 9 | 17 | 25 | Tax liability for Month 3 |
|---|---|----|----|---|
| 2 | 10 | 18 | 26 | |
| 3 | 11 | 19  1418 . 88 | 27 | 2720 . 37 |
| 4 | 12 | 20 | 28 | |
| 5  1301 . 49 | 13 | 21 | 29 | |
| 6 | 14 | 22 | 30 | |
| 7 | 15 | 23 | 31 | |
| 8 | 16 | 24 | | |

Fill in your total liability for the quarter (Month 1 + Month 2 + Month 3 = Total tax liability for the quarter ▶     Total must equal line 10 on Form 941 (or line 8 on Form 941-SS).

Total liability for the quarter: 7727 . 90

For Paperwork Reduction Act Notice, see separate instructions.        Cat. No. 11967Q        Schedule B (Form 941) Rev. 2-2009

RECEIVED BY IRS-EFFAX    08/03/2019 9:07PM (GMT-05:00)

US001278

EXHIBIT 6 - US001276 - F941 - 201906 - WVGE / 3        EXHIBIT 6 - US001276 - F941 - 201906 - WVGE-003

# Exhibit "M"

## WVGE and SANESO Entities
### Trust Fund Amount Outstanding At Due Date / Filing Date

| Entity | Year | Quarter | Total Tax Per Return | Trust Fund Portion of Taxes Due | Payments Made Prior to Due Date / Filing Date | Amount Outstanding At Due Date / Filing Date | Government's Exhibits |
|--------|------|---------|---------|---------|---------|---------|---------|
| WVGE | 2018 | 1st | $ 117,155.73 | $ 89,686.74 | $ 0.00 | $ 89,686.74 | 1 & 69A |
| WVGE | 2018 | 2nd | $ 101,249.81 | $ 81,491.78 | $ 0.00 | $ 81,491.78 | 2 & 69A |
| WVGE | 2018 | 3rd | $ 94,522.83 | $ 77,945.29 | $ 0.00 | $ 77,945.29 | 3 & 69A |
| WVGE | 2018 | 4th | $ 95,705.81 | $ 78,783.28 | $ 0.00 | $ 78,783.28 | 4 & 69A |
| WVGE | 2019 | 1st | $ 120,468.41 | $ 91,452.96 | $ 8,704.40 | $ 82,748.56 | 5 & 69A |
| WVGE | 2019 | 2nd | $ 114,775.09 | $ 90,915.30 | $ 7,727.90 | $ 83,187.40 | 6 & 69A |
| WVGE | 2019 | 3rd | $ 107,592.27 | $ 87,323.89 | $ 13,127.80 | $ 74,196.09 | 7 & 69A |
| WVGE | 2019 | 4th | $ 104,538.16 | $ 84,999.33 | $ 9,944.13 | $ 75,055.20 | 8 & 69A |
| WVGE | 2020 | 1st | $ 75,193.13 | $ 54,864.94 | $ 0.00 | $ 54,864.94 | 9 & 69A |
| WVGE | 2020 | 2nd | $ 104,858.77 | $ 84,344.14 | $ 10,991.52 | $ 73,352.62 | 10 & 69A |
| WVGE | 2020 | 3rd | $ 108,930.82 | $ 87,817.66 | $ 9,687.15 | $ 78,130.51 | 11 & 69A |
| WVGE | 2020 | 4th | $ 109,378.42 | $ 88,307.46 | $ 5,994.55 | $ 82,312.91 | 12 & 69A |
| WVGE | 2021 | 1st | $ 129,167.98 | $ 97,590.37 | $ 0.00 | $ 97,590.37 | 13 & 69A |
| WVGE | 2021 | 2nd | $ 121,024.46 | $ 95,654.61 | $ 3,565.25 | $ 92,089.36 | 14 & 69A |
| WVGE | 2021 | 3rd | $ 124,851.92 | $ 99,619.28 | $ 4,810.55 | $ 94,808.73 | 15 & 69A |
| WVGE | 2021 | 4th | $ 119,231.75 | $ 95,931.75 | $ 0.00 | $ 95,931.75 | 16 & 69A |
| WVGE | 2022 | 1st | $ 141,910.12 | $ 107,727.94 | $ 0.00 | $ 107,727.94 | 17 & 69A |
| WVGE | 2022 | 2nd | $ 128,700.81 | $ 101,749.78 | $ 0.00 | $ 101,749.78 | 18 & 69A |
| WVGE | 2022 | 3rd | $ 94,866.71 | $ 79,505.86 | $ 0.00 | $ 79,505.85 | 19 & 69A |
| SANESO | 2018 | 1st | $ 29,853.34 | $ 20,246.17 | $ 0.00 | $ 20,246.17 | 20 & 39 & 70A |
| SANESO | 2018 | 2nd | $ 32,990.43 | $ 22,048.72 | $ 0.00 | $ 22,048.72 | 21 & 40 & 70A |
| SANESO | 2018 | 3rd | $ 33,686.24 | $ 22,387.12 | $ 0.00 | $ 22,387.12 | 22 & 41 & 70A |
| SANESO | 2018 | 4th | $ 45,722.62 | $ 30,081.81 | $ 0.00 | $ 30,081.81 | 23 & 42 & 70A |
| SANESO | 2019 | 1st | $ 44,957.63 | $ 29,329.82 | $ 0.00 | $ 29,329.82 | 24 & 43 & 70A |
| SANESO | 2019 | 2nd | $ 67,017.14 | $ 43,903.57 | $ 0.00 | $ 43,903.57 | 25 & 44 & 70A |
| SANESO | 2019 | 3rd | $ 95,194.31 | $ 65,411.16 | $ 0.00 | $ 65,411.16 | 26 & 45 & 70A |
| SANESO | 2019 | 4th | $ 82,360.85 | $ 54,845.79 | $ 0.00 | $ 54,845.79 | 27 & 46 & 70A |
| SANESO | 2020 | 1st | $ 70,474.78 | $ 45,799.63 | $ 0.00 | $ 45,799.63 | 28 & 47 & 70A |
| SANESO | 2020 | 2nd | $ 73,070.09 | $ 48,044.22 | $ 0.00 | $ 48,044.22 | 29 & 48 & 70A |
| SANESO | 2020 | 3rd | $ 79,977.75 | $ 52,683.70 | $ 0.00 | $ 52,683.70 | 30 & 49 & 70A |
| SANESO | 2020 | 4th | $ 83,416.76 | $ 55,269.88 | $ 0.00 | $ 55,269.88 | 31 & 50 & 70A |
| SANESO | 2021 | 1st | $ 74,524.26 | $ 49,503.99 | $ 0.00 | $ 49,503.99 | 32 & 51 & 70A |
| SANESO | 2021 | 2nd | $ 85,553.46 | $ 57,371.23 | $ 0.00 | $ 57,371.23 | 33 & 52 & 70A |
| SANESO | 2021 | 3rd | $ 88,432.46 | $ 60,399.58 | $ 0.00 | $ 60,399.58 | 34 & 53 & 70A |
| SANESO | 2021 | 4th | $ 64,177.88 | $ 44,430.41 | $ 0.00 | $ 44,430.41 | 35 & 54 & 70A |
| SANESO | 2022 | 1st | $ 79,899.52 | $ 55,564.76 | $ 0.00 | $ 55,564.76 | 36 & 55 & 70A |
| SANESO | 2022 | 2nd | $ 72,452.08 | $ 50,559.77 | $ 0.00 | $ 50,559.77 | 37 & 56 & 70A |
| SANESO | 2022 | 3rd | $ 59,790.96 | $ 41,460.98 | $ 0.00 | $ 41,460.98 | 38 & 57 & 70A |
| TOTAL TRUST FUND AMOUNT OUTSTANDING AT DUE DATE / FILING DATE | | | | | $ | 2,450,501.35 | |

Government Exhibit 102

EXHIBIT 102 / 1

EXHIBIT 102