IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

UNITED STATES OF AMERICA,

v.  Criminal Action No. 2:24-CR-04 (KLEEH)

NITESH RATNAKAR,

Defendant.

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

Now comes the United States of America, by Randolph J. Bernard, Acting United States Attorney for the Northern District of West Virginia, by Jarod J. Douglas and Eleanor F. Hurney, Assistant United States Attorneys for said District, and hereby responds in opposition to Defendant's Renewed Motion for Judgment of Acquittal [Doc. 116], filed on December 22, 2024.

### I. Procedural Background

On February 21, 2024, a grand jury sitting in Elkins, West Virginia, returned a 43-count Indictment against the defendant.

The Indictment charged the defendant with 38 counts of Willful Failure to Pay Over Tax (Counts 1-38), in violation of 26 U.S.C. § 7202, alleging that the defendant willfully failed to pay over withheld payroll taxes for quarters in the period of 2018 through 2022, relating to employees of his medical practice, West Virginia Gastroenterology and Endoscopy ("WVGE"), and employees of his medical equipment manufacturing company, Saneso, Inc. ("SANESO").

The Indictment charged the defendant with three counts of Filing a False Income Tax (Counts 39-41), in violation of 26 U.S.C. § 7206(1), alleging that the defendant willfully made and subscribed individual income tax returns for tax years 2020, 2021, and 2022, in which he fraudulently inflated his tax refund by falsely claiming Form W-2 withholdings from WVGE in amounts higher than the tax deposits WVGE made.

The Indictment charged the defendant with one count of Obstruction of Justice (Count 42), in violation of 18 U.S.C. § 1512(c)(2), alleging that the defendant caused his return preparer to sign and backdate several Forms 941 that he then caused to be provided to the U.S. Attorney's Office for the Northern District of West Virginia as returns on subpoenas issued to WVGE and SANESO.

From November 12, 2024, to November 19, 2024, this Court held a jury trial on the Indictment. On November 18, 2024, after the close of the government's case-in-chief, the defendant orally moved for a judgment of acquittal on all counts. ([Doc. 103] at 116). After hearing argument from counsel and finding sufficient evidence on each count, viewing the evidence in the light most favorable to the government, the Court denied the motion. (Id. at 116-128).

On November 19, 2024, the jury returned a verdict of guilty on all tax counts and not guilty on the obstruction count [Doc. 94].

On December 22, 2024, the defendant filed the instant Renewed Motion for Judgment of Acquittal [Doc. 116], seeking a judgment of acquittal on all tax counts.

## II. Legal Standard

Federal Rule of Criminal Procedure 29(c) allows a defendant to renew a motion for judgment of acquittal after a guilty verdict. The trial court should deny the renewed motion if, "viewing the evidence in the light most favorable to the government, *any* rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). In its review, the trial court should not consider "the credibility of witnesses, but must assume that the jury resolved all contradictions in favor of the Government." United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998), cert. denied, 525 U.S. 1141 (1999).

## III. Argument

The defendant raises two theories which he argues entitle him to a judgment of acquittal on the tax charges of which the jury found him guilty. Each theory, which will be addressed in turn, fails to warrant such a remedy.

### A. The jury's acquittal on the obstruction charge does not require a judgment of acquittal on the tax charges.

The only change since the defendant's original motion for judgment of acquittal is that he was acquitted of the obstruction charge, which the defendant is misguided to argue requires his acquittal on the tax charges. Viewing the evidence in the light most favorable to the government, a rational trier of facts could have found the defendant guilty beyond a reasonable doubt on the tax charges despite acquitting him of the obstruction charge.

The practical scope of the defendant's motion is limited to whether there was sufficient evidence, applying this standard, to find that: (1) he purposely failed to pay over the withheld trust fund taxes (Counts 1-38) and (2) he knew it was false to represent in his individual income tax returns that his own withheld trust fund taxes had been paid over (Counts 39-41). Without the

evidence of what was charged as obstructive conduct, there remains sufficient evidence for a rational trier of fact to find that the defendant had these requisite states of mind.

### 1. Willful Failure to Pay Over Tax (Counts 1-38).

The jury heard from two IRS revenue officers about a civil collection history concerning the payroll taxes of WVGE that spanned almost seven years from 2013 to 2020, which thus covered most of the charged quarters. This testimony established that the defendant was personally and repeatedly educated on his responsibility to pay over to the IRS the payroll taxes withheld from the wages of WVGE's employees and that he, at times, caused tax deposits during the collection cases.

- Revenue Officer Elizabeth Winter testified that she was assigned a case in September 2016 after WVGE defaulted on the installment agreement from the prior collection case. ([Doc. 100] at 60). She testified that in December 2016 she issued a notice of levy action against WVGE for the unpaid payroll taxes. (Id. at 65). She testified that the levy action included seizing and removing money from WVGE accounts, including its account with Huntington National Bank. (Id. at 66). She testified that the levy action did not cause her to close the case because WVGE continued to accrue payroll taxes that were not timely paid over. (Id. at 67). She testified that, when the case continued into 2017, she started to receive letters from the defendant in which he disputed the balances that were outstanding and the levy action she had taken. (Id. at 68-69). She testified that, in reply, she sent the defendant a letter in July 2017, admitted in evidence as Government Exhibit 81, which she summarized as "explaining what he [the defendant] owes, why he owes, the amount of the original tax, the deposits that

4

were made, and why there's still balances outstanding." (Id. at 73). She testified that the letter demanded that the defendant cause WVGE to full pay the delinquent quarters by a date certain in August 2017 or there would be additional levy action. (Id. at 75-76). She testified that in late August 2017 she commenced additional level action because the defendant did not comply with the deadline, including the seizure of funds from the WVGE account at Huntington National Bank. (Id. at 76-77). She testified that on August 31, 2017, she received a telephone call from the defendant asking for a release of the levies. (Id. at 77). She testified that, during the call, she educated the defendant about his obligations regarding WVGE's accruing payroll tax liabilities, telling him to "make his deposits on time." (Id. at 78). She testified that, during the same call, she determined that the defendant was a person responsible for the trust fund recovery penalty, pursuant to an interview using questions in Form 4180, which was admitted in evidence as Government Exhibit 82. (Id. at 78-88). She testified that during the call and throughout the collection case she educated the defendant "[r]epeatedly" about his obligations to make sure tax deposits were made for WVGE. (Id. at 89). She testified about a subsequent in-person meeting with the defendant, at his request, where they discussed WVGE's outstanding balances and how to get WVGE to stop accruing taxes and he promised to make timely federal tax deposits. (Id. at 91, 95). She testified that the defendant called her again after she had to take levy action again in April 2018 and asked for a levy release, and that she again educated him about why she had taken the levy action. (Id. at 98-99). She testified that the defendant told her he would make full payment, specifically of the first quarter of 2018

taxes, but then he later filed a "zero" return claiming that no payroll taxes were collected for that quarter, which caused her to close her case. (Id. at 100-109).

- Revenue Office James Pinkney testified that he handled two collection cases involving WVGE's payroll taxes. One case started around 2013 and preceded Revenue Officer Winter's case. The other case started in 2019, after Revenue Officer Winter's case, and ended in 2020. He testified that the 2019 case was opened because WVGE accrued new payroll tax liabilities. ([Doc. 101] at 135). He testified that he received a call from the defendant, who said he would be able to partial pay and then get into an installment agreement. (Id. at 138). He testified that he had to take levy action against WVGE, and that the defendant contacted him to challenge the action. (Id. at 140). He testified that, throughout the 2019 case, he educated the defendant about his payroll tax obligations. (Id. at 141).

The jury also received evidence of the defendant's obsessive review of his bank accounts, including the account from which some WVGE tax deposits had been made, and could have reasonably inferred that the defendant would have known that the five-figure tax deposits were not being made.

- The jury received in evidence a spreadsheet (Government Exhibit 95) of mobile phone online accesses to WVGE's checking account held at Huntington National Bank, which had been used to make some federal tax deposits, and excerpts of the spreadsheet (Government Exhibits 95A-95E). ([Doc. 99] at 31-32).

- IRS Criminal Investigations Special Agent ("SA") Dakota Kelly testified that the data from Huntington National Bank showed that the defendant accessed the account online

6

over 5,000 times between 2018 and March 2023, with the logins having occurred at every hour of the day over that period. (Id. at 51-52).

Viewing the evidence of the defendant's repeated education during the civil collection cases and the evidence of the defendant's obsessive review of his bank accounts in the light most favorable to the government, a rational jury could have found that the defendant was aware of his tax obligations and intentionally disregarded fulfilling those obligations.

### 2. Filing a False Income Tax (Counts 39-41).

The jury saw the defendant's WVGE Forms W-2 for the tax years underlying Counts 39-41, including Box 2 that listed the Federal Income Tax Withheld as $53,775. (See, e.g., [Doc. 99] at 120). The jury saw the defendant's individual income tax returns report this figure among his "total payments" to the IRS. (See, e.g., id. at 121). The jury saw the exhibit that summarized the account transcripts, which showed that WVGE never made enough tax deposits for this statement to be true, and the jury heard SA Kelly's testimony confirming the same. (See id. at 26-27, 114, 117, 120).

Viewing the same civil history and bank account review evidence in the light most favorable to the government, a rational jury could have found that the defendant knew he was making false statements on his tax returns when he reported that his payments to the IRS included the amount that WVGE withheld from his wages.

### B. The testimony of Glen Wyland does not require a judgment of acquittal on the tax charges.

Against this backdrop of compelling (and thus, sufficient) evidence of his *mens rea*, the defendant attempts desperately to selectively relitigate the credibility of Glen Wyland and argue that his testimony alone requires a judgment of acquittal.

As an initial matter, a Rule 29 motion is not a vehicle for relitigating a witness's credibility, especially selectively in the defendant's favor, because the Court is required to assume that the jury resolved any contradictions in favor of the government. See Romer, 148 F.3d at 364.

More importantly, however, the jury did not have to find that Wyland's testimony vindicated the defendant on the tax charges, as he argues. Significantly, this argument ignores the real (and reasonable) probability that the jury disregarded Wyland's testimony altogether, not just on the issue of obstruction. In other words, there was evidence in the record from which a jury could have found that the defendant could not and did not rely on Wyland to pay over the payroll taxes or to advise him on payroll tax obligations.

- The jury heard and saw evidence that Wyland was a sole proprietor in a rundown building that also included a place to play video lottery machines. ([Doc. 99] at 85).

- The jury heard testimony that the defendant paid Wyland a monthly fee of only $500. ([Doc. 100] at 169).

- The jury heard testimony that the defendant was an extremely successful medical doctor, who held several patents and exercised his access to many other highly qualified and reputable tax professionals. ([Doc. 99] at 6, 118; [Doc. 101] at 156-162, 203; [Doc. 103] at 143-151).

- The jury heard testimony from several WVGE and SANESO employees about complaints they had made to the defendant about Wyland's services and about a running document the defendant and his staff had kept as to the status of these complaints. (See, e.g., [Doc. 101] at 191).

Viewing this evidence in the light most favorable to the government, the jury could have rationally concluded that the defendant *could not have reasonably relied* on Wyland to pay over the payroll taxes or advise him on payroll tax obligations.

The defendant once again points to Wyland's June 2016 letter on research and development credits and argues that he relied on the letter to conclude that WVGE and SANESO did not need to pay over withheld trust funds taxes. The jury saw this letter and heard about the letter ad nauseum. But the jury also heard testimony from both revenue officers that the defendant neither sent them a copy of the letter nor even mentioned the concept of research and development credits despite their execution of multiple levies of WVGE's bank accounts. (See [Doc. 100] at 70-71, 78, 96) (Revenue Officer Winter); [Doc. 101] at 143-144 (Revenue Officer Pinkney)).

Viewing this evidence in the light most favorable to the government, the jury could have reasonably concluded that the defendant *did not rely* on Wyland's advice about tax obligations.

### IV. Conclusion

For the reasons articulated herein and those previously articulated on the record, the defendant has failed to show that his acquittal on the obstruction charge or the testimony of Glen Wyland requires a judgment of acquittal on the tax charges because, viewing the evidence in the light most favorable to the government, a rational jury could have found him guilty of the tax charges beyond a reasonable doubt. Accordingly, this Court should deny the defendant's Renewed Motion for Judgment of Acquittal.

    Respectfully submitted,

    RANDOLPH J. BERNARD
    ACTING UNITED STATES ATTORNEY

By:   <u>/s/ Jarod J. Douglas</u>
Jarod J. Douglas
Assistant United States Attorney

And

<u>/s/ Eleanor F. Hurney</u>
Eleanor F. Hurney
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Jarod J. Douglas, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on the 5th day of February 2025, the foregoing UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

By: /s/ Jarod J. Douglas
Jarod J. Douglas
Assistant United States Attorney